WILLIAM F. ROBERTSON, APPELLANT, VS. BOLLING BAKER AND JOHN A. MACRAE, APPELLEES.

1. With respect to the mutual rights of the partners, there is no difference between a partnership formed for the purpose of prosecuting the business of planting and that of one formed for the purposes of trade.

2. If real estate be conveyed to the partners so as to vest in them a legal estate as tenants in common, yet in the absence of an express agreement, or of circumstances showing an intent that the estate is to be held for the separate use of the partners, it will be considered in equity as vesting in the partners in their partnership capacity, subject to an implied trust that they shall hold it until the purposes for which it was purchased

Robertson vs. Baker and Macrae—Argument of Counsel.

have been accomplished, and that it shall be applied, if necessary, to the payment of the partnership debts. The case of Loubat vs. Nourse, (5 Fla. R., 350,) referred to and approved.

3. Where upon the dissolution of a partnership, the personal property owned by the partnership was by the agreement of the parties partitioned between them, the act of partition operated (as between the co-partners) a total extinguishment of the partnership lien.

4. The acceptance of a mortgage by one partner to secure a balance due from another partner, vacates and neutralizes the partnership lien to that extent.

5. Where a bill is filed for the settlement of a partnership, it is not admissible to embrace in it a demand of an individual character.

6. In the settlement of partnership accounts, it is hazarding too much to make a decree in the premises without an intelligible report from a competent master.

7. A party having a beneficial interest in the decree sought to be obtained has a right to *intervene* by petition filed for that purpose, at any stage of the proceedings.

8. Where a party holds a mortgage upon a tract of land, which is afterwards sold to a third party, and that third party takes a mortgage upon another tract of land to indemnify him against the lien of the first mortgage, he may elect to be *subrogated* to the rights of that third party, but in doing so he vacates his lien, under his mortgage, upon the tract sold to the said third party.

Appeal from Leon Circuit Court.

This case was decided at Tallahassee.

A statement of the case is contained in the opinion of the court.

*James D. Westcott, Jr.*, for Appellant.

It was error, after sworn bill and answer, and order, purporting to settle the equities of the case, and for an injunction, receiver and reference to Master, for the Chancellor to have passed an order, without notice, making John A. Macrae, executor of Colin Macrae, deceased, a party to a sworn bill on petition not sworn to.

Such proceeding is permitting an adverse interest, a new

party upon proceedings *ex parte*, to come in and take advantage of an answer which defendant framed, looking only to the rights of the party then before the court.

Robertson, in his answer, never pretended to define, with accuracy, his relations to Macrae, who was no party to the bill.

His answer is framed looking to the merits and equities of the bill of Baker, which, if shorn of its uncertainties and inconsistencies, will be found to allege, as equities, the following grounds of relief:

1st, That the land now in the possession of the Receiver was partnership property; that the copartnership having been dissolved, he had a right to ask an application of all the partnership property to the payment of the debt of Macrae. (The court will, however, perceive, in its investigation of the case, that Baker, in his bill, time after time, claims that this debt to Macrae is his individual debt, and sets up that Robertson is his debtor for one-half the principal, and for the interest on the whole sum, (See record;) and that this was Macrae's view.   (See his letter *in evidence*.)

2d, That Robertson was his debtor on account of balances due him on account of *partnership*, as well as *private* transactions, (which is itself fatal to the bill, as the party cannot set up private and partnership claims in the same bill,) and that he held his mortgage in the sum of $4000 upon his interest in the land, and on crops, &c., to secure whatever balance might be due him upon general settlement.

Now, so far as Robertson's relations to Baker were concerned, we never denied that there was a copartnership for the purpose of farming contemplated, (although not in active operation,) at the date of the purchase, in Jefferson, of the Sheriff of Jefferson county, or that it was purchased with money, equally Baker and Robertson's; but we have ever denied, and do still, that Macrae ever regarded himself as a partnership creditor.   (See bill, answer to petition, and Co-

lin Macrae's letter in evidence.) The making of Macrae, upon petition unsworn to, a party to a sworn bill, is permitting him to be made a party to a bill, the answer to which was framed, looking only to Baker's equities as a partner.

Nor did we deem it necessary in our answer, with Baker only a party, to make any allusion to Macrae's rights, *whatever they might have been*, under his mortgage. Baker's relation to us was that of a vendor of an undivided half of a tract of land, which had been mortgaged by him to Jones, with a condition of indemnity authorizing him, Jones, to sell the land in Leon to pay any damage resulting to him from Macrae's action under his mortgage upon the land sold Jones by Baker. Baker being our vendor or grantor, and having no right vested in himself by which he could ask for a sale of our land, independent of Jones and Macrae, in framing our answer we did not see proper to frame it looking either to Macrae or Jones' right under the mortgage, or to answer their supposed equities. We were perfectly satisfied that Baker, (independent of his right as a partner, as well as with them as hereafter shown,) the mortgagor of Macrae as well as of Jones, and our vendor or grantor, could neither at law nor in equity, upon his case as stated, ever receive assistance to nullify his own covenants and his own deed, and that this was his relation to us, and that both in law and equity his relation to Jones and Macrae was that of a mortgagor, entitled simply to redeem upon the payment of the debt, to secure which the mortgages were executed; nor did Jones, or any other party through him, have any right or power until he had suffered damage. No right enured to him except when he was assailed by Macrae, and when his rights could operate and his mortgage itself become an existing subject of action. Under the bill, then, as filed by Baker, we were only called upon to reply to Baker, that the interest we claimed in the property was not impressed with the mantle of partnership character; that he himself had so recog-

nized it for ten years, and that he was our *debtor* instead of creditor; not thinking that a grantor of real estate, upon which he had given a mortgage to a third party, (Jones,) could, by virtue of these relations, ask and obtain a decree for the sale of real estate in the hands of his vendee, holding his deed with full covenants.

After sworn bill, answer, injunction and receiver, and order settling the equities of the case, it was error to make Macrae a coplaintiff to *sworn* bill, upon petition unsworn to. 9th Yerger, 287; 6th Paige, 655; 1st Edwards, 46; 6th Paige, 22; 4th Paige, 538; 1st Paige, 424; 2 Paige, 67; 13th Eng. Chancery Reports, 455.

While it is the universal practice of courts of equity to be extremely liberal in permitting amendments by adding *new* parties defendant, and to permit amendments as to new matters of fact to bills *unsworn* to, it is almost equally the universal rule *not* to permit an amendment by adding co-plaintiffs to sworn bills; and the usual rules of practice prescribed by the Supreme Courts of the United States as to amendments, which are the rules in this State, relate only to bills not sworn to. There is no affidavit by Macrae. See 1st John. Chancery Reports, 433.

The making Macrae a party to the bill *after answer*, thus making a new case, can not be sustained. 2d Schvaler and Lafroy, 10.

Macrae, as mortgagee, could never properly be joined as coplaintiff with Baker, his *mortgagor*, seeking sale of mortgaged property. We have here parties claiming under different and *inconsistent* titles, which renders it impossible for these parties to be made coplaintiffs. Daniel's Chancery, late edition, 228; 4th Paige, 156; 3 Atk., 500; 2 Sim., 417.

Macrae, as a stranger, should have intervened by petition to be examined *pro interessee suo*, or by supplementary bill. Marcott vs. White and others, 1st Sim. and Stuart, 17; 10th Johnson, 510; Daniel's Ch'y, late edition, 1693.

Robertson vs. Baker and Macrae—Argument of Counsel.

The petition in such cases is a mere collateral matter following the fate of the bill, entitled to no substantive decree. See cases cited above.

Baker, before Macrae became a party, even admitting that the property was impressed with partnership character, was entitled to a simple decree for sale, nothing more. See case of Crawshay vs. Maule, cited on page 23, in connection with this point.

This bill contains three distinct grounds of suit:

1st, Macrae as an alleged *partnership* creditor, with adverse rights as to both Baker and Robertson.

2d, Baker as a *copartner.*

3d, Macrae as mortgagee of certain real estate in Jefferson county, Baker being the mortgagor. If there is any privity or connection between Robertson and Macrae, I am unable to perceive it.

We insist, however, that Macrae is no partnership creditor; he has no rights except under his mortgage, and under his mortgage he certainly cannot be made Baker's coplaintiff; their rights are adverse. He cannot swear that he is a partnership creditor, and would perjure himself if he did.

He took separate security from Baker, and has never claimed any connection with the partnership. He says in his letter to B. Baker, 26th Sept., 1847, "In my beginning with you a correspondence, which I sincerely hope may prove, as I have every reason to expect, satisfactory to both of us, I will first avail myself of it in this instance to wish you success in all your undertakings. And as it may be of benefit and saving of expense to both of us, I would strongly recommend your remitting to Messrs. Prime, Ward & Co., of New York, any payments you may desire to make to me at any time you may desire, either by bills of exchange upon New York or England, or in cotton, consigned to them for sale on your account, and the net proceeds in either case to be credited by me on account of your mortgage to me, for

198          SUPREME COURT.

Robertson vs. Baker and Macrae—Argument of Counsel.

either interest due or in reduction of capital. And in case you might wish to ship any cotton, on your account, to Liverpool from Apalachicola or St. Marks, you might do so, consigning the same to my correspondents, the Messrs. Land-bush, Tinne & Co., merchants, and for whom I will be re-sponsible to you for any remittance of cotton or bills of exchange you may send to them on my account; and if cotton you send them, do not omit to write in time, sometime pre-vious, to effect insurance for you, at whatever price you choose to value your cotton per bale, and to pay the net proceeds to me on your account. You may, therefore, act in this matter as you deem best for your interest—to sell your cotton in Tallahassee, New York or Liverpool. I hope to have, in due time, the pleasure of receiving a letter from you in reply to these presents, which you will please to for-ward to me by the mail which goes from Boston to Liverpool twice every month. Meantime, with my best wishes for your health and happiness,

I remain, dear sir, yours truly,
(Signed)                           COLIN MACRAE."

In this letter there is no intimation of the existence of a partnership. See also John A. Macrae's letter to Dr. W. F. Robertson, of the 28th November, 1865:

"Mr. Baker has the whip hand of you, as he is the reputed proprietor, and he is also *the only party* with whom I am connected in the mortgage. Your name is not in it, and I am rather in a difficulty to settle with you *without Mr. Ba-ker's consent*. I have no power over him except by fore-closing, and this is *what he wants*. Supposing that you were to pay up the entire debt, I could not convey the property to you without first foreclosing and getting possession. The property is not now mine, it is Mr. Baker's. (The property, Macrae says, was *Baker's*, not a *partnership*.) You must bear this in mind. Your arrangements with him, so far as I see, do not in any way change my position with him, and I

Robertson vs. Baker and Macrae—Argument of Counsel.

have no power to make arrangements with the property till I get it into my possession by a foreclosure. I am, therefore, resolved, in the first place, to do this. I shall bid for the property to the extent of the mortgage and interest, and if no one bids higher, I shall resume possession. I may then make terms. If, however, you can make arrangements with Mr. Baker for *paying* up the *interest* and *maintaining* the *mortgage, you are at liberty to do so ;* but I do not see how I can interfere until I again get possession of the estate. *I shall then be in a position to entertain any propositions from you.* Mr. Baker states that you should have paid the interest, and *that he believed you had. I do not know* the terms of your arrangements or partnership with him, and cannot, therefore, say ; but, in the meantime, I see nothing for it but to foreclose."

This is Macrae's definition of *his own status*.

Baker has always insisted that he is *individually* the debtor to Macrae, and has always claimed that he, Baker, is a creditor of the copartnership to the extent of the debt, principal and interest, that he owes Macrae. See the following in evidence : " In the event of your paying any further sums for principal or interest of the amount due by me to Colin Macrae, you will please consider it at your own risk." See deposition of Thomas J. Perkins and the *answer* of W. F. Robertson. Complainant further showeth that, in consequence of the failure of said Robertson to pay the said annual interest of $640, the indebtedness of said Robertson to said *complainant* has been greatly increased, amounting, with interest upon the sums which should have been paid annually, to the sum of nearly $4,608, in addition to the other items, as will more fully appear by reference to exhibit B, herewith filed, and for the *whole of which this complainant is liable* to said Macrae, who is now demanding the payment of the same from this complainant, as well as demanding the said

200 SUPREME COURT.

Robertson vs. Baker and Macrae—Argument of Counsel.

principal of $8,000. See bill. "Unless the said Robertson is required to pay complainant the sums *due to him*, and the said interest of $4,608, due for rent, as well as the share which the said Robertson owes of the $8,000, amounting to $4,000 more." See bill.

The decree referring to Master states nothing of a partnership debt. It, on the contrary, directs the Master to ascertain what is the *individual* debt of Baker and what is the *individual* debt of Robertson. So also does the final decree repel any idea of *partnership* responsibility. See more fully the *answer* to Macrae's petition in the record.

To make a partnership liable to a demand in respect of separate transactions, an *agreement* must appear. Peele *ex parte*, 6 Vesey, 601.

"In cases of this nature, the primary consideration is, not so much to ascertain between what parties the original contract was made as to whether there has been subsequently, *with the consent of all parties*, any change or extinguishment of that contract." Story on Partnership, par. 153.

"That an agreement between parties as to their debts, for the conversion of *separate* into *joint* debts, or vice versa, will be *invalid* without the accession of the creditors." See *ex parte* Williams, Buck, 15; *ex parte* Freeman, Buck, 472. See also the *note* to *ex parte* Bonbonus, 8 Vesey, 540; note *ex parte* Peele, 6 Vesey, 604.

"If the original debt is exclusively contracted by one partner on his own account, but has been immediately assented to by the partnership *with the* consent and *approbation of the creditor* as a partnership debt, it will henceforth be treated in his favor as a joint debt." Story on Partnership, par. 155.

But even when the liability has clearly attached and become absolute and binding, subsequent transactions between such third persons and one of the partners may work an extinguishment of such liability, either wholly or in part.

Robertson vs. Baker and Macrae—Argument of Counsel.

Thus, if a partnership were originally liable to a creditor for a debt, and he should afterward accept a security of *one* partner—at all events, if it should be a security of a higher or negotiable nature, for the whole debt as a satisfaction thereof, wholly or in part—it will operate as an extinguishment of the debt of the partnership.

This very question was before the court in Thompson vs. Percival. In that case Lord Denman said, " If, therefore, the plaintiff in this case did expressly agree to take, and *did* take the separate bill of exchange of James, in satisfaction of the joint debt, we are of opinion that his doing so amounted to a discharge of Charles." It is not required that the chattel (given or accepted) should be of equal value; for the party receiving it is always taken to be the best judge of that in matters of uncertain value. Thompson vs. Percival, 5 Barn. & Adolphe, 925.

Where the original credit has been exclusively given to the partner contracting the debt, the partnership will not be liable therefor, but the *individual* partner only; although it has been applied to the use and benefit of the partnership. Story on Part., par. 134.

In the case of *ex parte* Hunter, James Hunter and Specht were partners. Hunter borrowed money from Lanoy Hunter on his own account, and applied it to partnership purposes. The firm having become bankrupt, Lanoy Hunter tried to make it a joint debt of the firm. Held by the Chancellor that it is a separate debt of James Hunter, and can only come in by way of circuity, by taking the *place* of *James Hunter* after all the partnership debts are paid. Hunter *ex parte*, 1st Atkyns, 228.

If a partner borrows a sum of money and gives his own security only for it, it does not become a partnership debt by being applied to partnership purposes with the knowledge of the other partner. Beran vs. Lewis; Stokes vs. Whitaker, 2 Sim., 189.

202 SUPREME COURT.

Robertson vs. Baker and Macrae—Argument of Counsel.

A bond given by one partner for partnership contract debt due from the partners to a creditor, and *accepted* by *him*, is, by application of law, a *release* of the *other partner*. 2 Maryland Digest, 754.

As the law merchant, with regard to dormant partner's liabilities, is confined to *trade* and *commerce*, and does not extend to the purchase of lands, if the nominal purchaser of lands choose to hold them, the party who advanced the money, if *not named* as *grantee*, can have no title to the land, whatever remedy he may have against him to whom the land was conveyed; he *cannot, therefore, be holden to the vendor* for the payment of any *part of the consideration*, unless he had agreed to be liable. Pitts vs. Waugh, 4 Mass. Reports, 424.

If money is borrowed or goods bought, or any other contract is made by one partner upon his exclusive credit, he alone is liable therefor; and the partnership, (although the money, property, or any other contract, is for their proper use and benefit, or is applied thereto,) will in manner be liable therefor. Story on Part, par. 134.

Where a bill of exchange, drawn by A, after the dissolution of the partnership with B, and the proceeds of the bill went to pay, and did pay the partnership debts of A and B, which A, on the dissolution of the partnership had agreed to pay, the holder of the bill, after its dishonor, can have no claim on B, in consequence of the particular appropriation of the proceeds of the bill. LeRoy, Bayard & Co. vs. Johnson, 2d Peters, 186.

If the partner deal with another in his individual name, and upon his sole responsibility, without even an allusion to the partnership, it was unimportant to that other to know that the partnership was dissolved, since he was dealing, not with the firm and upon its credit, but with the individual with whom he was contracting, and upon his credit. LeRoy, Bayard & Co. vs. Johnson, 2d Peters, 187.

"It is equally competent for them (third persons) to rely on that exclusive credit, and either refuse to contract with the firm, or to exonerate the firm from all liability upon any contract which would otherwise bind the firm as being for their account and benefit. For the maxim of the common law here prevails in full force, *modus et conventus vincent legem;* and either party may, at his pleasure, waive or relinquish rights to which he would otherwise be entitled." Story on Part., par. 134.

Looking further to results which follow this position, we ask: Is Baker entitled to the relief he prays for with Macrae not a party? We think all that portion of the bill, which has any thing to do with Macrae, fails, and becomes nought; and as Baker's prayer for relief in his own behalf is only conditional in its character, to-wit: To pay to him the surplus after payment of Macrae, it fails also.

As under the general prayer for such other and further relief, the court is only bound to grant such relief as is agreeable with the case made and consistent with the special relief prayed, we maintain that Baker cannot ask a decree for a general sale.

We do not deny the right of one partner, upon a dissolution, to a decree for a sale of joint property and an account; but this cannot even be decreed in this bill. The rights of parties upon a dissolution are precisely equal: to have the whole concern wound up by a sale and a division of the produce; but we deny the right of Baker to get relief by way of general sale, upon a bill by himself, praying a decree for the benefit of a party not a partnership creditor, and who, in fact, cannot swear that he is, or his testator ever thought he was, a partnership creditor. 2d Paige, 396; 4th Paige, 537, 229.

The next question, which is somewhat preliminary in its character, is, admitting that Macrae is a proper party, could such decree as is made in this case, independent of

the merits of the case, ever have been made? The inter-locutory order of the 18th November, 1865, directs that the Master report how much of the debt due Colin Macrae is due by Baker. The third section of the decree directs that the land called the L'eau Noir tract, in Leon county, be sold, the proceeds to be applied, one-half in payment in behalf of Baker, and if there is surplus after B pays this one-half, the decree directs, in the event the personal property of Robertson is insufficient to pay his interest, that this surplus is to be applied to it. This is certainly a most remarkable decree. It first determines that Baker's debt to Macrae is $4,000; it then determines that Robertson is indebted for the entire interest, and then decrees, if after a sale of all of Robertson's property, some of the interest debt is unpaid, Baker must paid it; and it would be consistent with this decree, if Baker's land sold for $8,000, and Robertson's property for $500, then $4,000 of the proceeds of Baker's land should be applied to Robertson's debt.

The rule is, that the rights of the several plaintiffs must be consistent with each other, and the result of the same state of facts. No plaintiff can get a decree against a co-plaintiff.

Baker in his bill sets up an individual mortgage of Robertson to him upon a portion of the land, Robertson's separate interest, as well as all the personal property. Macrae in his petition sets up a mortgage of Baker to him upon the same land, and claims the personal property. If one fails, the other, it was supposed, must succeed. Can such a bill be sustained? (Daniel's Chancery, 226.) The result is, that we have here parties claiming under different and inconsistent titles, which renders it impossible for these parties to be made co-plaintiffs. Daniel's Chancery, late edition, vol. 2, p. 228; Daniel's Exchequer Reports, 171; 9th Price, 187; 4th Price, 156; 3d Atk., 500; 2d Sim,, 417.

It may be insisted, that we are too late in these objec-

Robertson vs. Baker and Macrae—Argument of Counsel.

tions, and that they should have been made *in limine*. Our answer is, that Baker's bill called for an account and prayed for a final adjustment of account, which a Court alone could settle, and we were willing to go into account with our debtor; that his mortgage was the only equity in his bill, Macrae being no party, and this we were willing that he should enforce, it being a matter of account and we being actors entitled to a decree without cross-bill. Our additional answer also is, that we did object at the time to Macrae's being made a party, and the petition on file reserves the point under our statute. See answer to Macrae's petition. Our additional answer is, that Macrae was made a party without notice; that the proceedings were irregular and *ex parte* in their character, totally unjustified by any rule of practice and subversive of justice.

This is not a case where objection is made for want of proper parties. It is a case where objection is made to making a person a party in this stage of the cause to a sworn bill who is in fact not a partnership creditor, but has a higher equity, a mortgage, in taking which he waived his vendor's lien, and which, even if he did look to any partnership liability, which we totally deny, he waived his equity and lost it by taking higher security, and this Court cannot create a new security of a different character, and which by chance may happen to be available. The result of making Macrae a party in this way is substantially to permit a complaiannt to dismiss his sworn bill without costs and to make the defendant a party to a new suit without process, and to retain an injunction and receiver in the old suit. If, however, this position is not sustained, and Macrae is, against his will, made a partnership creditor and properly a party, we insist, 1st, This is a case, not of partnership in trade, but of joint interest in land. Each party may apply for a partition or sell his own interest, but cannot compel a sale of the whole. That there is such distinction, see 1st

Swanston, 504, paragraph 505, where Lord Eldon, in considering the case of Crawshay vs. Maule, a case of a partner seeking a sale of the property, says, an important consideration is whether the business is such as could subject the parties to become bankrupts. The distinction is obvious, and for this purpose material, between a partnership in trade and a joint interest in land as between tenants in common. The Court does not dissolve the tenantcy, but leaves each party to sell his share, while in cases of partnership in trade, unless under peculiar circumstances of the trade, the rule is different. This, too, was a case of a mine, and it is held by both Collyer and Story that the *lex mercatorio* is in a great many respects applicable to an interest of this character. It is not like farming, which is no trade, and which has never been held so. That of farming is not a trade, see the case of Randall vs. Randall, 7th Simons, 52.

Under the bankrupt laws, referred to by Lord Eldon, can a farmer be a bankrupt? On the contrary, the statute, 5 Geo. II, chap. 30, expressly declares they shall not be liable to be deemed a bankrupt, "for their concern (as Blackstone says, book II, 471,) is to manure the ground and make the best advantage of its produce." Under these statutes in England, making traders liable to become bankrupts, it was always held that farmers were excluded. I do not question the position that with trading and commercial partnerships, each of the parties, upon dissolution, may sell the entire property, whether real or personal, and it is no matter whether the titles were originally taken in the name of one or all the partners. It is sociable property. The distinction is evident—one is trade, the other is not. To the one the *lex mercatorio* applies, to the other it does not. See 22d Howard's Reports.

The requirements of commerce and of trade make it necessary for the good of the commercial world that the responsibility of trade should be, to some measure, co-exten-

sive with the great and extended credit and faith required by the interest of communities to exist in trade, and it will be found that the *lex mercatorio* is varied and controlled by this circumstance and its principles limited in their application.

It was not the object of the partnership to deal in real estate. As to respects in which the *lex mercatorio* is modified when applied to real estate, see the cases following, in addition to other citations. 8 Wendell, 507. See American Leading Cases in Chancery, 4 Mass., 424; 22 Howard; 12th Leigh's Reports.

It was held in the Supreme Court of New York, upon the strength of the ultimate opinion of Lord Thurlow, in the principle case, (Thornton vs. Dixon,) and of the Master of the Rolls, in the case of Ballmain vs. Shore, (9th Vesey, 500,) that the principles and rules of law applicable to partnerships, and which govern and regulate the disposition of partnership property, did not apply to real estate. Coles vs. Coles, 15 John., 159. See also Smith vs. Jackson, 2d Edwards, 28.

In Goodwyn vs. Richardson, 11th Mass. Rep., 469, the court state that a purchase of real estate with partnership funds would make the parties tenants in common of the real estate, and the act would create a division of the stock *pro tanto*.

It is a general and settled rule, that in all actions, real and mixed, tenants in common must sever, because they have several freeholds and claim by several titles. Jackson vs. Branch, 2d Cai, 15 New York Reports.

Stephen & Willet Coles, although they were partners in the distilling business, which they carried on on their own lot, were declared by the court to be tenants in common in the land, and not partners in it. The real estate owned by them must be considered and treated as such, without any reference to the partnership. Coles vs. Coles, 15 John., 159.

Crawshay & Maule were partners in a mine. In addition to manufacturing their own ore, they bought ore and old iron from other persons, and manufactured on their own premises. Lord Eldon decided that they were originally tenants in common, having an interest in land distinct from a partnership in trade, and they would have remained so, had they continued to manufacture their own ore from their own mines only. It must be recollected that an interest in mining has been held to some extent an interest in trade, which has never been held of farming. This is a leading case on this subject, and is always cited approvingly by English and American authorities. Crawshay vs. Maule, 1st Swanston, p. 495.

Richard & William Randall, tenants in common of certain lands, agreed to carry on the farming business in partnership, and afterwards entered into co-partnership as maltsters and biscuit bakers. They subsequently purchased other lands with partnership funds. The Chancellor decided that farming was not a trade; that the lands were purchased for farming purposes; that the trading business of maltsters and biscuit bakers was collateral to and arose out of the principal business of farming, and did not change the tenantcy in common in the lands. Randall vs. Randall, 7 Simons, 52.

Tompkins & Murray, merchants, owned real estate jointly as tenants in common. They each also owned separate real estate. On becoming bankrupt, both the joint and separate property was conveyed by the parties separately, in trust, &c., for the benefit of their creditors. Suit as to validity of titles. Held by C. J. Marshall that "where the legal estate was in Tompkins, the whole property passes by law by his deeds." Where the legal estate was in Murray, the whole property passes at law by his deed. Where the legal estate was in Tompkins & Murray, the whole property passes in moities at law, by their several deeds. Anderson & Wilkins vs. Tompkins, et. al.; C. J. Marshall's Decisions, 456.

As the law merchant, with regard to dormant partner's liabilities, is confined to trade and commerce, and does not extend to the purchase of lands, if the nominal purchaser choose to hold them, the party who advances the money, if not named as a grantee, can have no title to the land, whatever remedy he may have against him to whom the land was conveyed; he cannot, therefore, be holden to the vendor for the payment of any part of the consideration, unless he had agreed to be liable. Pitts vs. Waugh, 4th Mass. Reports, 424.

If, however, it is decided that the lien operates in planting co-partnerships so as to enable the partner to obtain a sale of the whole, we then maintain that none of the property involved in this suit is impressed with the partnership character, or subject to the lien of either partner.

Story, pages 563–'64–'65, gives us the general doctrine of trading partnership liens and creditor's equities.

We have in this case: 1st, Baker's deed to Robertson with full covenants. 2d, Robertson's mortgage to Baker after dissolution, and a payment of over $4,000 upon the express recognition of separate property.

Robertson holds Baker's deed with full covenants to an undivided half of the land, and no one, after reading the mortgage executed by R. to Baker, two years after the dissolution, in which it is distinctly stated that Robertson owned one undivided half of the land, and Baker the other, can conceive that the parties have not themselves, by their own act and agreement, severed all joint interest. Their interest and property in this land is a separate and private interest, and a separate and private property.

The personal property was actually divided. Every act shows a severance; and if there can be such a thing as a tenantcy in common, wherein the lien of a partner for a sale will not operate, this is such a tenantcy. As to evidence to prove severance, see 11th Vesey, 3.

If the court require something more than an absolute deed before dissolution, and after formation of partnership, coupled with this mortgage after dissolution, then it must decide that it was absolutely necessary to divest the lien to have a partition of the real estate, a doctrine which cannot be supported.

This deed, mortgage, and the acts of the parties are sufficient. A party cannot nullify his own covenants. A fraudulent conveyance is operative *inter partes*.

Any arrangement or agreement that the property shall be separate, *bona fide* in its character, is sufficient to divest lien. Cross on the Law of Lien, 137; note to Story, 622; Collyer on Partnership, 505; Story, 583, and cases there cited; 1st Simons & Stuart, 600; 11th Vesey, 3.

The whole question is mere matter of evidence. If the parties intended to sever the property, it is separate and not subject to lien.

So far as personal property is concerned, there was a division after the dissolution. Baker admits it is separate property. "The assets of said firm consist now only of 1,320 acres of land." See his bill.

The cotton is Robertson's individual property, produced after the dissolution. There is a bill of sale from B. to R., for his share of the personal property.

The bill sets up a mortgage indebtedness of Robertson to Baker of $4,000. The answer denies all indebtedness of Robertson to Baker and claims a debt of Baker to R. of four or five thousand dollars, and charges fraud; and yet, strange to say, the injunction was continued. The errors apparent from the record in regard to this matter are, 1st, The Chancellor should not, upon the order sending the account back, after first report, have granted permission to bring in new accounts; 2d, There is error in the Chancellor setting aside all reports and making an arbitrary decision based upon the mortgage and his own views of the value of Confederate

money; 3d, There was error in the Court removing Master Flagg—Daniel, 1,142 and note; 4th, The Court erred in opening receipts given for Confederate money at par and fixing an absolute and arbitrary value upon the amounts paid in the absence of all testimony fixing any value.

Where a matter of fact, depending upon conflicting evidence, has been referred to a Master, his decision will not be interfered with, unless there is very plain case of error. 1st Stock., (New Jersey,) 309; 14th V'mt, 514; 5th Gray, 423; 7th Cushing, 222; 10th Dick., 398.

No exceptions to Master Flagg's report are admissible, and the paper purporting to be exceptions should have been taken off the file. Bett's Supplement to Vesey, 106; 1st Swanston, 156; 7th John's Ch'y, 137.

Upon the hearing upon the report of Hugh Archer, nothing was properly before the Court except the matter of the exceptions. Whatever may have been insisted before the Master, is waived or abandoned, if not made matter of exceptions. Daniel, 1,322; 3 John's Chan., 81; 11th Wheaton, 103; 6th John's, 566.

Irregularity of proceedings not matter of exceptions. 6th Paige, 127; 27 Vmt., 695, 696.

An improper rejection of testimony is to be corrected by a motion to the court for an order compelling the Master to receive evidence. Daniel, 1,322, citing Ward vs. Jarrot, Walk. Chan.

The interest is due Macrae by way of rent. There is no lien for rent which can be enforced in a Court of Equity under such proceedings as these. Robertson was tenant from year to year, upon an annual rent reserved.

Macrae's remedy was at law—assumpsit upon the promise to his agent. The bill distinctly states that it was agreed between R. and B., that R. should retain the land, paying rent therefor to Macrae. The answer states distinctly that this arrangement was consented to by his agent.

Robertson has always viewed it in this light, and has made payments to Macrae upon this understanding for years. Baker himself prevented the payment of this interest in 1861 and 1865. See Perkin's testimony and Baker's letter to Robertson. He cannot, therefore, ask a specific performance of the agreement.

*McIntosh* on the same side.

*M. D. Papy* for Appellees.

*J. B. Galbraith* on same side.

DuPONT, C. J., delivered the opinion of the court.

This is a suit in equity, instituted by Bolling Baker against William F. Robertson. The complainant alleges in his bill that, on the 1st day of January, A. D. 1847, the parties agreed to form a copartnership for the purpose of conducting and carrying on the business of planting, and in view of that purpose and design, they purchased from one Colin Macrae a certain tract of land or plantation, situated in the county of Jefferson, in the State of Florida, together with fifty-one slaves, and mules, stock, &c.; that the said purchase was made on the joint and equal account of both partners, but as the said Robertson was absent from the State at the time, and for the convenience of perfecting the security to be given to Macrae, the title to the property was made to the complainant individually; that, at the same time, the complainant executed to the said Macrae, in his individual capacity, a mortgage of the property purchased, and to secure the unpaid portion of the purchase money.

The bill further shows that within a few weeks after the completion of the said purchase from Macrae, it was deemed to be to the interest of the said partners to sell the plantation purchased from Macrae and to purchase one in Leon county; that said sale was accordingly made and

another tract of land was purchased in the county last aforesaid; that the said Robertson being still absent from the State, and for the like convenience, as aforesaid, the title to this tract of land was also made to the complainant individually, but that he subsequently transferred, by proper conveyances, to the said Robertson one undivided half interest in the said tract of land, and one undivided half interest in the negroes, stock, &c., which were embraced in the original purchase from Macrae; that it was agreed between the said copartners and the agent of the said Macrae that the security for the balance then due to Macrae on the original purchase should be transferred to and made a lien on the said last mentioned tract of land, and which was accordingly done.

The bill further shows that the partnership was conducted on joint account, continuously, until the first day of January, A. D. 1856, at which time it was dissolved by mutual agreement; that, at that date, the balance due Macrae on the original purchase, amounted to the sum of $$,000, which bore an interest at the rate of eight per cent. per annum; that to provide for and keep down this interest, it was agreed between the copartners that Robertson should retain the possession and use of the plantation, paying as rent therefor the amount of $640, which was the amount of the annual interest on the said balance of $8,000.

The bill further alleges that there was no settlement made between the copartners at the time of the dissolution of the copartnership, and that the accounts between the partners, growing out of the partnership transactions, remain unadjusted to the present time.

It is further alleged that the said Robertson has failed to pay the interest on the balance of the Macrae debt, as he had agreed to do, since the year 1860 or 1861, whereby the debt has been largely increased in amount.

The bill further shows that, in order to sustain the credit

of the firm and to prevent a sale of the partnership property, they, the said copartners, executed divers mortgages of the partnership property, in order to obtain the necessary advances of money. That these advances becoming due, he, the complainant, was forced to meet the payment out of his individual funds, and, to secure himself, received from the parties holding them an assignment of the mortgages above mentioned.

It is further alleged that the complainant holds a mortgage from the said Robertson, executed in the latter part of the year 1858, to secure the payment of $4,000, which the said Robertson acknowledged to be then due to the said complainant for advances made by him, and which mortgage embraced the then growing crops and all future crops of the said Robertson.

The bill further alleges that the land mortgaged to Macrae to secure the payment of the balance now due for principal and interest, is rapidly deteriorating under the bad husbandry of and through the waste committed by the said Robertson, in cutting down and clearing large portions of the forest land.

The prayer of the bill is, that the copartnership be decreed to be dissolved, and that it be referred to a Master to take and state an account between the copartners, of all matters growing out of the business of the firm; and also to take and state an account between the said partnership and the said Macrae, and to ascertain and state what amount was due to said Macrae for principal of his debt on the first day of Jan., A. D. 1856, and what amount is due for interest on said debt since the first day of January, 1856. The prayer also asks for the appointment of a Receiver. It is also asked that the securities assigned to the complainant for advances made by him, shall be decreed to remain as a lien for any balance that may be due him, as also the mortgage of 1858. It also asks for the sale of the land mortgaged to Macrae, and the

Robertson vs. Baker and Macrae—Opinion of Court.

appropriation of the proceeds of the sale to the payment of the balance that may be found to be due him upon the coming in of the Master's report. There are other matters prayed for which are not material to be set forth in this opinion.

The answer of defendant, Robertson, admits the existence of the partnership, as set forth in complainant's bill; admits the purchase from Macrae, and alleges that it was made " with moneys belonging to the said partnership;" admits the mortgage of the property purchased to secure the balance due on the purchase; admits the sale of the tract of land purchased from Macrae and the subsequent purchase of the tract in Leon county; but denies that "he was a party to any agreement, or knows that any agreement was made, by which the mortgage given for the balance unpaid upon the original purchase in Jefferson county was transferred to the tract of land in Leon county, Florida; and that if such transfer of said lien to the said Colin Macrae was made, it was done by the said complainant without his knowledge or consent." The answer further admits the dissolution of the copartnership on the first day of January, A. D. 1856, and the agreement of the defendant to retain the possession of the plantation, and to pay, as rent for the same, an amount equal to the annually accruing interest on the balance of the Macrae debt then due and unpaid. The answer alleges that, in compliance with his agreement, the defendant did continue to pay the interest on the said debt to the first day of January, 1859, and had made arrangements to continue to do so, but was prevented and foiled in his purpose by the unwarrantable interference of the complainant.

The answer further admits the payment by the complainant of the balance for advances due to Smallwood, Anderson & Co., and of the transfer by the latter to the complainant of the securities which they held to secure the payment of the

216                SUPREME COURT.

Robertson vs. Baker and Macrae—Opinion of Court.

same; but alleges that at the date of this payment the complainant was indebted to the firm of Baker & Robertson in an amount much larger than the amount of the balance so paid by him to Smallwood, Anderson & Co. The answer also admits the execution of the mortgage in 1858 to secure to the said complainant the payment of $4,000, but alleges that the same was made inadvertantly and through an erroneous view as to the real state of indebtedness between him, the defendant, and his copartner Baker.

There are in the answer divers other admissions and allegations, but as these do not affect our conclusions in the view which we have taken of the case, it is unnecessary to incorporate them in this opinion.

The record shows that after an injunction had been granted, as prayed for in the bill, a Receiver appointed to take charge of the partnership property, both real and personal, and an order had been made for a reference to a Master to take and state an account between the parties, to-wit: on the third day of April, A. D. 1866, John A. Macrae, as executor of the aforesaid Colin Macrae, deceased, applied by petition to be permitted to be made a party complainant to the bill, setting forth in said petition his interest in the property in litigation, which application was granted and he ordered to be made a party complainant.

The record further shows, that at a subsequent day, to wit: on the 19th day of April, 1866, a motion was made to dissolve the injunction theretofore granted and to vacate the order appointing a receiver, and which motion was refused. It also shows, that after divers references and re-references, with exceptions sustained and overruled, to wit: on the 6th day of August, A. D. 1866, the defendant filed his answer to the petition of the said Macrae, in which he contests the right of Macrae to intervene in this suit as a party, having no interest in the subject matter in controversy.

The record further shows that the cause having been

brought to a final hearing, the Chancellor caused to be entered the following decree, to-wit :

First. The exceptions made and taken to the report of F. H. Flagg be and are hereby allowed, and said report set aside.

Second. The Master hereinafter appointed is hereby ordered and decreed to pay to John A. Macrae the moneys in his hands, arising on the sale of cotton or other crops, not expended in carrying on said plantation, and the costs and expenses of these proceedings and of the said Receiver in satisfaction and discharge of the interest on the debt due said Macrae, for which defendant Robertson is liable, as by the report of H. Archer, heretofore made.

Third. That the land called the "Lenoir" plantation, referred to in the bill and exhibits in this cause, be sold by Charles H. Austin, who is hereby appointed Special Master for that purpose, on giving the usual notice ; the proceeds whereof to be applied as follows, viz: one-half of the proceeds to be applied in payment in behalf of Bolling Baker for one-half of the principal, viz: $4,000 of the Macrae debt, and one-half to be applied in behalf of Wm. F. Robertson for his one-half of the principal of the Macrae debt, and also in payment of as much of the interest due by said Robertson on said debt as may remain unpaid after applying the proceeds of cotton and other crops in Receiver's hands thereto, as hereinbefore ordered ; and in the event of a surplus remaining after applying the one-half of the proceeds aforesaid in behalf of said Baker in discharge of his half of the principal of the Macrae debt, the said surplus to be paid over to the said Baker, unless such surplus should be necessary to be applied to said debt for failure of the proceeds of said cotton and other crops, and of the half of the proceeds enuring to said Robertson to fully pay and discharge the interest of said debt, and the one-half of the principal payable by the said Robertson.

Fourth. It is further ordered and decreed, that the mortgage executed by the defendant to the complainant, dated the fifth day of November, eighteen hundred and fifty-eight, be foreclosed, and the defendant is hereby barred and foreclosed of and from all right and equity of redemption of, in and to the property described in said mortgage, and all persons claiming, by, through or under him, are also so foreclosed and barred.

Fifth. If the cotton and other crops, as well as the one-half of the proceeds of the land enuring to said defendant, shall be insufficient to pay the interest on said Macrae debt, and the one-half the principal payable by said Robertson, it is ordered and decreed that the personal property, mules, &c., described in said mortgage, and now existing in the hands of the Receiver, be sold by the said Master, and the proceeds, or so much thereof as is necessary therefor, applied to the payment and discharge of said interest and one-half of the principal as may remain to be paid as aforesaid.

Sixth. The court having considered the matters arising upon the indebtedness claimed by the parties, doth adjudge and decree that there is due from the defendant to the complainant the sum of seventeen hundred and ten dollars, and that for that amount the complainant is entitled to a sale of the personal property mentioned in said mortgage, and that the proceeds of such sale be applied to the satisfaction of said amount and paid to said complainant; but if it should be necessary to sell said personal property to pay the Macrae debt or any part thereof, as hereinbefore decreed, then the balance of the proceeds of such sale, and any balance that may remain after paying the portion of the Macrae debt and the interest on said debt, payable by said Robertson, be paid by the Master aforesaid to the payment and discharge of the said amount decreed, as aforesaid, to be due to complainant; and that Master do sell said property, real and personal, to carry out the provisions of this decree.

And the Receiver, Richard Saunders, is hereby ordered and decreed to turn over and deliver to Charles H. Austin, forthwith, all property, moneys and effects in his hands, received by him as Receiver, under the order appointing him in this cause. And it is further ordered that the account of said Saunders is approved, and he is hereby allowed the sum of six hundred dollars for his services as such, which may be retained by him out of the monies in his hands. And it is further ordered, that the costs of these proceedings be paid by the defendant, and in the meantime, that the same be paid by the Master, out of the funds that may come into his hands.

From this decree an appeal was taken by the defendant, and the case is now before us for our adjudication. The petition of appeal sets forth the following as the grounds upon which a reversal is asked, viz :

First. All the interest which he has in the real and personal property involved in this suit, is separate and distinct, is not impressed with partnership character, and there exists no lien of either partner to have a sale.

Second. Macrae is improperly made a party to sworn bill, after injunction, receiver and answer, and improperly made a coplaintiff of Bolling Baker, their rights being adverse and distinct—he being no partnership creditor, and having taken mortgage security.

Third. Upon the reference upon exceptions to the first Master's report, the court should not have allowed new accounts to be brought into the Master's office.

Fourth. The reports of both Masters, Flagg and Archer, should not have been set aside, and decree made upon the mortgage of defendant to complainant Baker ; such decision being an arbitrary decision, in conflict with previous orders in the cause, and fraud and error having been charged in the answer.

Fifth. Receipts given for Confederate money and accepted

by a creditor cannot be opened, and an absolute and arbitrary value be fixed by the Chancellor in the absence of all evidence fixing any value, nor can they be opened with such evidence.

Sixth. The removal of Master Flagg, upon no evidence except *ex parte* petition of complainant, a party in the cause, was contrary to every rule of chancery practice.

Seventh. The decree should have been for Robertson, on Master's report, or the Chancellor should, at most, have only sent the matter of account back to Master's office, dissolving injunction and discharging Receiver—Robertson, as tenant, from year to year, being entitled to possession.

Eighth. The whole proceeding is irregular, illegal and defective.

In support of the first exception to the decree, as set forth in the petition of appeal, the Solicitor for the appellant assumed that the property sought to be subjected to the partnership lien, as well defined by the law, was not so impressed with the character of partnership property as to render it liable to the operation of that law. It was insisted that as to the real estate employed in the business of planting, it was held by the parties constituting the partnership as "tenants in common," and not as copartners; and as to the personalty that there had been a severance of title, upon the dissolution of the copartnership and that Robertson held the portion that was allotted to him in *severalty* and exempt from the lien of his copartner Baker. A distinction was drawn between *trading* partnerships and others of a different character, and it was insisted that the lien growing out of the application of the "*lex mercatoria*" applied only to the latter description of property. To sustain this distinction numerous cases were cited, which we shall now proceed to examine.

The case of Crawshay vs. Maule, (1 Swanson R., 495,) was relied upon to show that real estate was not subject to the

Robertson vs. Baker and Macrae—Opinion of Court.

lien of partnership, and the casual remark of the Chancellor, made before the case had been brought to a full hearing, that it was an important consideration "whether this business is such as would subject the parties to become *bankrupts*," was urged as affording the proper test. We do not think that such was the design of the Chancellor, and this is obvious in his subsequent remarks in the same case. At page 521 he is reported as saying, "for ordinary purposes a lease is no more than stock in trade, and as part of the stock may be sold, nor would it be material that the estate purchased by a partnership was *freehold*, if intended only as an article of stock." He says further, "with respect to mere joint interest in land, I apprehend that the rule would be different, the parties then becoming tenants in common, each cannot call on his companions to concur in a sale, but must sell his own interest. It is said that this is only the case of tenancy in common of a mine; if so, I think that the doctrine with respect to land would apply, and not the doctrine with respect to trading partnerships; but a very difficult question may arise, whether, if the parties being originally tenants in common of a mine, agree to become jointly interested in the manufacture of its produce, for the purpose of sale, they continue mere tenants in common of the mine."

There is nothing in these remarks to sustain the idea that the lien derived from the law of partnership may not equally attach to real as to personal property. It is all made to depend upon the *intention and agreement* of the copartners. It is true that, according to the English cases, and not a few of the American, unless that intention and agreement is made manifest and apparent, the strict rules of the common law, with regard to the succession, will be held to apply to that species of property, and this will be more clearly illustrated in our examination of other cases cited on the same side at the hearing.

In the case of Thornton vs. Dixon, (3 Brown's C. C., 199,)

the Lord Chancellor is reported to have said on the first hearing that "he had always understood that when partners bought land for the purpose of the partnership concern, it was to be considered as part of the partnership fund; and consequently that the land in question must be considered as personal estate and distributable as such." But when the case came on to be heard a second time, he is reported to have modified that opinion by stating that, "had the *agreement* been that the mills should be valued and sold, it would have converted them into personalty of the partnership; but that the agreement which had been entered into was not sufficient to vary the nature of the property, and therefore, that after the dissolution, the property would result according to its respective nature—the real as real and the personal as personal estate."

In the case of Ripley vs. Waterworth, (7 Vesey, 425,) which was discussed before Lord Eldon, he said, "I am strongly inclined to think that this is personal estate, being of opinion that upon the true construction of the deed, *the parties had contracted with each other*, that when the partnership should be determined, whether by the act of the parties or of God, the property should be converted to all intents and purposes." "By the deed it is to be considered part of the capital stock in trade. The question is, whether three persons, engaging in the purchase of real property, such as this, and to be applied to such purposes, might not and did not *contract* that, if the partnership should be dissolved by the act of all, or the death of one, it should be all sold together for the purpose of producing more benefit upon the sale?"

It will be seen by an attentive and critical examination of these two cases, that the question whether land is to be considered as real or personal property upon the dissolution of the partnership, is made to depend upon the previous intention or agreement of the copartners; and that the idea

Robertson vs. Baker and Macrae—Opinion of Court.

that there is any inherent quality in that species of property which precludes it from being subjected to the lien derived from the law of partnership, is not sustained or sanctioned.

The case of Bell vs. Phyn, (7 Ves., 453,) decided by Sir William Grant, Master of the Rolls, on the same day that the judgment was delivered in the last foregoing case, is thought to have conflicted with the principle established by the two cases above referred to; but we do not discover the alleged conflict. In the case of Bell vs. Phyn, the land in controversy had been conveyed to the copartners by deed *stipulating* that they should hold as tenants in common in fee. By the very terms of the deed, the character of the property was defined and fixed, and against this express contract and agreement of the parties, the implied lien of the partnership could not prevail. Indeed, it is very strongly intimated in the opinion delivered in the case, that had this been otherwise, the principles established by the two cases before referred to would have prevailed. The ground of the decision is expressly stated by the Master of the Rolls. He says: "Here the parties have *limited* and *defined* the extent of the interest the partnership was to have in the real property." There is then no conflict, but a strong intimation of the most perfect concurrence.

The case of Randall vs. Randall was confidently relied upon at the hearing of this cause to sustain the position that land could not be made the subject of partnership, unless the object and design of the association be for the purposes of trade. A careful consideration of the *facts* of this case, we think, will show that the principle upon which it was decided is not in conflict with the cases already alluded to.

Richard and William Randall, with their brother James and sister Elizabeth, upon the death of their father, became entitled, as *tenants in common* to an estate partly freehold and partly leasehold. The two former, shortly after their

14

father's death, agreed to become copartners in farming, in-
cluding the growing of hops.   They subsequently entered
into the business of malting and baking.   The farming busi-
ness was carried on upon the family estate.   They purchased
of James his interest in the estate, and paid for it with the
partnership funds.   They also purchased other lands, a por-
tion of which was conveyed to them in moieties.   The ob-
ject of the bill was to have the real estate of the copartner-
ship declare to be personalty.   The Vice-Chancellor, after
extensively reviewing many of the older cases, says: " Ta-
king then the law to be as it is to be collected from the cases
to which I have referred, the question is whether the real
estates in this case are to be considered as personal property.
Now it does not appear that the parties purchased any part
of the land for the purposes of their partnership trade.   Hav-
ing in the first instance agreed to carry on the farming busi-
ness in partnership, they subsequently agreed to become co-
partners—first, as malsters, and afterwards as biscuit-bakers.
The first purchase that they made was of an undivided
fourth part of an estate, of which they previously had a
moiety as tenants in common.   It would, however, be strong
to say that because these parties being partners in the farm-
ing business, which is not a trade, happen collaterally to
that business to carry on a trade, therefore the nature of the
property which they so purchased is to be changed."

The deduction drawn from this part of the foregoing opin-
ion delivered in that case is, that farming not being a *trade,*
no association of individuals for that purpose would consti-
tute them copartners so as to invest them with lien derived
from the law of partnership.   We do not think this a legiti-
mate deduction.   That question was not mooted, nor was it
necessary to be made, to warrant the conclusion at which
the Vice Chancellor arrived.   Had it been attempted to
subject the lands to the lien growing out of the farming
partnership, it would have been a sufficient answer to have

Robertson vs. Baker and Macrae—Opinion of Court.

shown that as to the lands derived by inheritance and used for the farming purposes, they were originally held as a tenancy in common, and there was no evidence to show that there had ever been any agreement between the partners, either express or implied, to change the character of the property.

In the close of the opinion delivered in the case of Randall vs. Randall, the Vice Chancellor goes on to say: "The malting business ceased in 1807, and the biscuit-baking in 1815. In 1820, the two brothers purchased two houses and gardens in Portesea, which of course were not used for farming purposes, but were let to tenants. Those premises were conveyed in the same manner as the land purchased of Tarver, and if in those instances in which the lands purchased by the brothers were conveyed to them, it is to be inferred from the form of the conveyances that they intended to hold them as real estate, it is but fair to conclude that they intended to hold those lands which were not conveyed to them in like manner; for it is unreasonable to suppose that they intended to hold part as land and part as impressed with the character of personal estate."

Though the decision in this case was adverse to the attempt to convert the land into personalty, yet it is not to be inferred that the principle upon which it was decided is in conflict with the principle established by the cases before referred to. The *contract* or *agreement* of the parties, and even the *intention*, when clearly manifested, is recognized as the true and only test by which the character of partnership property is to be determined. And this, we think, will be found, upon a critical examination of the reported cases, to be the established doctrine of the English Courts. We have not been able to detect the great conflict of opinion on this subject so frequently referred to by American Judges. On the contrary, so far as we have had access to the English reports, we have found the adjudications on this point most

harmonious, and the law settled and fixed. That law we take to be as follows, viz:

1st. That where the land used in the conducting of the partnership business was held by the copartners as tenants in common prior to and at the time of the formation of the partnership, it will continue to retain that character, unless the same be altered by some express contract or agreement of the parties. 2d. That the simple fact that land has been paid for out of partnership funds is not of itself sufficient to stamp upon it the character of personalty and subject it to the lien of partnership. It must have been necessary for the conducting of the business of the partnership, or there must be some contract or agreement, either express or implied, that it should be converted into personalty.

The case of Coles vs. Coles, (15 John. R., 159,) cited by the counsel for the appellant, fully sustains the English doctrine, as above stated. In that case the Court say: "No objection can be made on the ground of an existing partnership between Stephen and Willet Coles. They were tenants in common, not partners in this land. The principles and rules of law applicable to partnerships, and which govern and regulate the disposition of the partnership property, do not apply to real estate. One partner can convey no more than his own interest in houses or other real estate, even where they are held for the purposes of the partnership. There may be special covenants and agreements entered into between partners relative to the use and enjoyment of real estate owned by them jointly, and the land would be considered as held subject to such covenants; but nothing of that kind appears in the present case, and in the absence of all such special covenants, the real estate owned by the partners must be considered and treated as such, without any reference to the partnership. These are principles fully established by the cases of Thornton vs. Dixon, (3 Brown's C. R., 199,) and Balmain vs. Shore, (9 Vesey, Jr., 500.)

Robertson vs. Baker and Macrae—Opinion of Court.

It will thus be seen that in New York the doctrine of the English Courts, making the character of the realty to depend upon the agreement of the parties, is in no wise departed from, but sanctioned and sustained. The cases cited from 4 Mass., and 1 Brock. R., do not apply to a case of this kind, and are therefore of no authority upon the point under consideration.

In Vermont, the courts are disposed to carry the doctrine of converting realty held by a partnership into personalty further than has been done in England. It has been held in that State, that real estate belonging to a partnership fund should follow the same law of distribution in a Court of Chancery which is applied to personal property. Vide Rice vs. Barnard, 20 Vermont, 479.

In the State of Kentucky, the doctrine of the English Courts is fully sustained by the decision in Divine vs. Mitchum, (4 B. Munroe R., 489.)

In Massachusetts, the doctrine of conversion is carried beyond that of the English Courts, and it is there held that, " When real estate is purchased by partners, with the partnership funds, for partnership use and convenience, although it is conveyed to them in such a manner as to make them tenants in common, yet in the absence of an express agreement, or of circumstances showing an intent that such estate shall be held for their separate use, it will be considered and treated in equity, as vesting in them in their partnership capacity, clothed with an implied trust that they should hold it until the purposes for which it was so purchased shall be accomplished; and that it shall be applied, if necessary, to the payment of the partnership debts. Upon the dissolution of the partnership, by the death of one of the partners, the survivor has an equitable lien on such real estate for his indemnity against the debts of the firm, and for securing the balance that may be due to him, from the deceased partner, on settlement of the partnership accounts

between them; and the widow and heirs of such deceased partner have no beneficial interest in such real estate, nor in the rent received therefrom after his death, until the surviving partner is so indemnified." Dyer vs. Clark, 5 Met. R., 562.

The distinction between the English and the Massachusetts doctrine is, that while the former requires it to be shown affirmatively, that it was the agreement or intent of the partners to hold the real estate subject to the partnership lien, before it will be declared to be personalty, the latter subjects it to the partnership lien, unless it be as clearly shown that it was *not* the intention of the parties thus to subject it. This is a marked distinction, and considering the difference of circumstances under which real estate is held in the two countries, we are of opinion the Massachusetts doctrine is to be preferred.

· This is not a new question in this court, and an apology may be due for laboring it to the extent that has been done in this opinion; but the books of American reports are so rife with charges against the English Courts for *vacillation* on this subject, that we deemed ourselves excusable in contributing to the task of disabusing the professional mind.

The case of Loubat vs. Nourse, decided by this court, and reported in the 5th Fla. R., 350, was a claim by a widow of a deceased partner for dower in real estate that had been purchased by the partnership funds. Justice Thompson, in a very able opinion, reconciled the English adjudication on the point, but announced the more extended doctrine of Massachusetts as the better law. That decision is conclusive on the point raised in this case.

Recurring now to the facts of this case, the question is, whether it comes within the rule. By reference to the statement of the case contained in this opinion, it will be seen that the bill alleges, and the answer admits, that the land was purchased with partnership funds, and for partnership

Robertson vs. Baker and Macrae—Opinion of Court.

purposes, and was used in prosecuting the business of the partnership for a period of nearly ten years. With this state of facts before us, whatever doubts might have arisen under the English rule as hereinbefore laid down, there is none in the application of the rule as announced in the case of Loubat vs. Nourse. We therefore conclude that the *land* held by the firm is subject to partnership lien for the payment of partnership debts.

With regard to the *personal* property used in prosecuting the business of the partnership during its existence, a different state of facts is shown by the record. It is made to appear that upon the dissolution of the partnership in 1856, there was a partition of all of that species of property and a total severance of the joint estate. This being so, it is very clear that, as between partners, the partnership lien no longer existed in respect to the property so partitioned and set off. Each held his portion in *severalty*, unaffected by the mutual rights growing out of the previously existing partnership. What lien the complainant may have on this property under his mortgage of 1858, and his right to enforce the same in this suit, will now be considered.

The giving of the mortgage of 1858 by Robertson to Baker is shrouded in considerable doubt and mystery. It is made to appear that at the date of its execution Robertson was in Florida and Baker residing in Georgia, and that it was intended to secure the payment of a balance acknowledged to be due on a running account between the parties. But neither from the allegations of the bill, the admissions of the answer or the proofs in the case is it definitely shown of what that balance is composed, whether growing out of partnership or individual transactions. Nor in this connection do we deem it a matter of much importance to be ascertained, for even if the indebtedness proposed to be secured by the mortgage should be shown to have originated in a partnership transaction, the acceptance by Baker of the *spe-*

*cific security* vacated and neutralized the partnership lien to that extent.  The taking of the mortgage operated in law to divest the right, which he had previously enjoyed, to look to the partnership property for the payment of the debt, and he was thenceforth remitted to his specific security.  The acceptance of the mortgage made the debt, whatever might have been its character before, the individual debt of Robertson, and its foreclosure cannot be enforced in this suit, which is instituted for the single purpose of settling up the business of the partnership lately existing between the parties.  The bill is defective in this respect, and must be dismissed so far as it seeks to foreclose this mortgage, and as a necessary and legitimate sequence, the order heretofore made for the appointment of a Receiver must be vacated, and the injunction granted must be dissolved.

In considering the state of the account between the parties, as exhibited by the respective reports of the two Masters, who were successively appointed to take the same, we are presented with the extraordinary spectacle of a difference in the results of over fourteen thousand dollars.  In such a state of case a court may well hesitate before passing definitely upon the rights of the parties.  The Chancellor below, however, did arrive at a conclusion on this point and decreed accordingly; but, as we are ignorant of the basis of the calculation or the process through which that conclusion was reached, we deem it to be most consonant with justice and equity that the decree upon this point be set aside and the accounts be recommitted to a competent Master, to be properly adjusted.  In the settlement of partnership accounts, running through a period of nearly ten years, it is hazarding too much to make a decree in the premises without an intelligible report from a competent Master.  In order to insure such a report, the Master must be specially instructed to confine his investigation exclusively to accounts growing out of partnership transactions, and to exclude from his report

Robertson vs. Baker and Macrae—Opinion of Court.

all demands on either side which are of an individual character only; for these the parties must look outside of this suit for redress.

We are now brought to the consideration of Macrae's interest in this suit, and his right to be made a party thereto. In the discussion of this point, the Solicitor for the appellant insisted that "after sworn bill, answer, injunction, appointment of Receiver and passing of order settling the equities of the case, it was error to make Macrae a party," and numerous authorities were cited in support of the position. In the view which we take of Macrae's real character, as a party in these proceedings, it becomes unnecessary to determine the question as to how and at what stage of a cause a stranger may be made a co-plaintiff. The position of Macrae is not that of a co-plaintiff seeking the enforcement of any claim against either plaintiff or defendant. He is a mere intervenor, coming by petition and asking that he may have the *benefit* of any decree that may be pronounced between the parties in respect to property in which he has an interest superior to that enjoyed by either of them. Taking this view of his position in this suit as a party, his right to *intervene* cannot be questioned. How far that intervention will enure to his benefit will be hereafter considered.

It was further insisted at the hearing that, admitting the right of Macrae to intervene, he was entitled to no claim upon the funds to be derived from the sale either of the personal property or of the lands in Leon county, and that his right was restricted to his specific lien, created by mortgage, on the tract of land situated in Jefferson county. That he could assert no claim as a general creditor of the partnership, but must be restricted to his mortgage security. As a general proposition, this position is undoubtedly correct, but there may be equities arising out of the facts of the case, which may tend materially to the modification of its application.

15

The origin of the Macrae debt, it will be recollected, was the sale to the partnership of a tract of land situated in Jefferson county, and a mortgage upon the same to secure the payment of the purchase money. It will be recollected further, that this tract of land, so mortgaged to Macrae, was sold by them to Jones, and the proceeds of that sale invested in a tract of land in Leon county. That to indemnify Jones against the lien of the mortgage given to Macrae, he received from the copartners a mortgage upon the tract of land in Leon county, and the sale of which is asked for in this bill. Under this state of facts, it is insisted for the appellant that Macrae having no right as a general creditor, and his mortgage being upon the land in Jefferson and not upon the land in Leon, (which is the land sought to be sold,) he can assert no claim to the proceeds of the sale. We admit that but for the doctrine of "subrogation," so frequently resorted to in equity, such would be his position, and he could have no standing in this suit; but, by the application of that doctrine, Macrae becomes invested with the rights which Jones acquired under the mortgage given to indemnify him against the lien of Macrae upon the land purchased by him in Jefferson county. This is a right that Macrae is entitled to, for with a full knowledge of the contents of the bill and answer, and the object sought to be obtained, he does, by the simple act of intervention in this suit, make an *election* which estops him from ever hereafter asserting any claim upon the land purchased by Jones. Thus, by this simple mode of proceeding, so usual in courts of chancery, Jones gets the incumbrance removed from his land, Macrae is placed in a position to have his debt satisfied, and the copartners are relieved *pro tanto* from their obligation incurred in making the original purchase. The decree upon this point must be reformed and made to conform to these views by requiring that Macrae shall execute a release of his mort-

gage upon the Jefferson county land before he is permitted to receive the proceeds to arise from the sale of the land in Leon.

A question has arisen in our minds as to the disposition that shall be made of the money now under the control of the court. Upon the principle that Macrae cannot intervene beyond the extent of his mortgage, we were at first inclined to the opinion that he could not participate in this fund. But reverting to the fact that there was an agreement between the copartners entered into at the time of the dissolution, that Robertson should hold the possession of the land and have the use thereof, in consideration of his paying the annually accruing interest of the Macrae debt; and to the further fact that a part of these funds, if not all of it, arose from the produce of the land, we think that strict equity between the copartners, as well as justice to Macrae, demands that these funds shall be applied to the payment of the *interest* so contracted to be paid by Robertson.

Considering all the circumstances of this case, as they have been made known to us by the record, we are of opinion that neither party can claim exemption from responsibility for the necessity which has induced the institution of these proceedings, and therefore, we direct that the costs of the suit, up to this date, be borne by the complainant and defendant in equal proportions.

It is hereby ordered, adjudged and decreed that so much of the decree of the Chancellor as directs the sale of the land, and the application of the proceeds to the payment of the Macrae debt, be affirmed, and that the decree be executed in the manner therein directed. And as to the remaining portion of the said decree, it is hereby ordered, adjudged and decreed that the same be reversed and set aside, and that the cause be remanded to the court below with directions that the bill be retained, and such other and further

proceedings had in the cause as may be conformable to the views expressed in this opinion.

It is further ordered, that the costs accruing from the prosecution of this appeal, be paid by the complainant and defendant in equal proportions.