WILLIAM P. MARVIN, SURVIVING PARTNER, APPELLANT, vs. GEORGE W. HAMPTON AND WIFE, APPELLEES.

1. Where the proofs offered by a plaintiff in support of his case leave the matter in such doubt and uncertainty that it is impossible for the court to do justice or make any specific decree, the bill should be dismissed.

2. Where before final hearing a suit is dismissed as to a defendant in the absence of a transcript of the record in which the order is made, or of any positive evidence of the ground of the order, the court cannot presume in a collateral suit that the judgment subsequently rendered against the other defendant was binding upon the

defendant as to whom it was dismissed, or that the order dismissing the suit was an adjudication in favor of the defendant.

3. A defendant, relying upon the defence that the same matter was in issue and determined in a former suit, should set forth so much of the former proceeding as will show that the same point was then in issue and determined, and should aver that the allegations as to the title to relief were substantially the same in the second bill as in the first.

4. A decree in a suit to which a person was not a party does not bind him.

Appeal from the Circuit Court for Leon county, to which the case was transferred.

This is a suit in equity brought in Madison county by George W. Hampton and his wife, Susan A. E. Hampton, against William P. Marvin, surving partner of the firm of J. M. & W. P. Marvin. They allege that on the 5th of February, A. D. 1872, they filed their complaint in the Circuit Court for said county against David Montgomery, sheriff of Madison county, and as *ex-officio* administrator of the estate of Susan A. K. Hampton, deceased, William O. Hampton, lately her husband, and the defendant, William P. Marvin, as surviving partner of the firm named. That in said complaint they alleged that the lands in the hands of D. Montgomery, administrator as stated, belonged to Susan A. E. Hampton ; that a mortgage alleged to have been executed by the said Susan A. K. Hampton in her life-time was not made in the presence of a judicial officer of the State of Florida ; that she was a married woman at that time, and that William O. Hampton was not the executor of the last will and testament of Susan A. K. Hampton. Plaintiffs allege further that previous to the commencement of this suit the said William P. Marvin, as surving partner as aforesaid, brought an action against William O. Hampton, as executor of Susan A. K. Hampton, to foreclose the mortgage above referred to, and was proceeding to sell the lands mentioned in said mortgage when Da-

vid Montgomery, sheriff and *ex-officio* administrator of the estate of Susan A. K. Hampton, filed his petition in the Circuit Court for Madison county, alleging that he was sole administrator of her estate, denying that William O. Hampton was executor as he claimed, or that any claim had been presented to him by said William P. Marvin, praying for an order to restrain the said Marvin in his action for foreclosure, and that on the 29th December, A. D. 1871, further proceedings in the foreclosure suit were enjoined; that said order was afterwards dissolved, and that plaintiffs are informed that no further proceedings were taken in said suit by Montgomery, he believing that the original foreclosure suit had been abandoned, as they had commenced suit against him as administrator; that in June, 1872, S. Pasco, attorney for said Marvin, notified the Clerk of Madison Circuit Court to place on the trial calendar the case of W. P. Marvin, surviving partner, &c., against David Montgomery, sheriff and *ex-officio* administrator of the estate of Susan A. K. Hampton, and gave notice to the attorney of said David Montgomery that said cause would be brought on for trial at the next term, but that no further steps were taken in said case. Plaintiffs allege further that in November, A. D. 1873, the attorney for Marvin, without notice, made application for an order to appoint Geo. W. Bogue, sheriff of Madison county, to carry out the judgment of foreclosure aforesaid, and that such order was made.

Plaintiffs deny that William O. Hampton was the executor of the last will of Susan A. K. Hampton, affirm that she died intestate, and that D. Montgomery was the administrator of her estate. They affirm, upon information and belief, that William P. Marvin never presented his claim to such administrator. Plaintiffs further allege that Nicholas Fox was the grandfather of plaintiff, Susan A. E.

Hampton; that by his last will and testament he bequeathed certain property to Susan A. K. Hampton for and during her natural life, and at her death to her children, she dying without issue, the same to go to his son, E. B. Fox, and his grandchildren then living; that the said Susan A. K. Hampton died without issue; that the said E. B. Fox died, and that your oratrix, Susan A. E. Hampton, is the only surviving grandchild of said Nicholas Fox, and was the only one at the death of the said Susan A. K. Hampton, thereby being entitled to the property mentioned.

Plaintiffs allege that during the lifetime of the said Susan A. K. she and her husband desired to exchange the property mentioned in the will for land situated in Madison county, Florida, but could make the exchange only with the consent of your oratrix, she being the only grandchild entitled to said property in the event the said Susan A. K. died without issue, and that your oratrix consented to said exchange, provided she should have the same interest in the land so purchased as in the property bequeathed, and as your oratrix understood the land was to have been conveyed in trust for that purpose. Plaintiffs allege further that on the 5th day of February, A. D. 1872, suit was commenced by them against D. Montgomery, sheriff and *ex-officio* administrator of Susan A. K. Hampton, William O. Hampton, her late husband, and W. P. Marvin, surviving partner as aforesaid; that in said suit answers were regularly filed, except as to W. P. Marvin, who demurred to the complaint, and that afterwards the said Marvin having abandoned his mortgage, as plaintiffs were informed and believe, the suit was dismissed as to him; that after decree of reference, filing of notice of *lis pendens* describing said land, there was final decree on the 4th of December, A. D. 1872,

whereby D. Montgomery, as administrator, was ordered to turn over to your oratrix the said lands.

Plaintiffs then pray that the judgment of foreclosure of the mortgage stated may be vacated and set aside, the complaint and all proceedings therein dismissed and the mortgaged declared null and void.

After various proceedings, none of which, so far as we can see, affect the merits of the case, the defendant, on the sixth of August, A. D. 1877, filed a general answer in the cause. He therein admits that a complaint was exhibited against him as stated in the bill, and that David Montgomery, as *ex-officio* administrator of Susan A. K. Hampton, and William O. Hampton, were defendants with him, but he alleges that the complainants admitted the sufficiency of his defence, which was by demurrer, by their taking an order of dismissal as to him. He alleges that the plaintiffs had notice of his judgment of foreclosure upon his said mortgage, and that Susan A. E. Hampton, if she took any title by virtue of this proceeding, that such title was subject to the lien of his judgment; that the debt upon which the judgment of foreclosure was based was contracted by the late Susan A. K. Hampton and William O. Hampton for necessary family supplies furnished by defendant's firm, and that the parties were occupying the lands as the separate property of Susan A. K. Hampton; that he took his said mortgage without notice of any other title or claim to the land, and upon the assurance that it was the separate property of Susan A. K. Hampton, and avers that as to said land he occupies the position of a *bona fide* purchaser, for valuable consideration, without notice. He alleges that Susan A. K. Hampton died without issue, that William O. Hampton became her sole heir and legatee, and that the mortgage, even if defective as to the estate of the wife while living, became effective

as against William O. Hampton upon her death.   He alleges
that during the life-time of Susan A. K. Hampton both she
and her husband, in good faith, acknowledged the valid-
ity of the mortgage.   He avers, if letters of administra-
tion were taken out in the county of Madison by Mont-
gomery, that such letters were void, as the place of abode
of herself and her husband at the time of her death was
in Jefferson county.   He alleges that he sued William O.
Hampton as executor, and not as executor *dé son tort*; de-
nies any abandonment of his judgment of foreclosure ; af-
firms that complainants have admitted the justice of his
claim by making arrangements for its settlement and com-
promise, the carrying out of which arrangement they sub-
sequently prevented by their own action in instituting the
suits named, and that a memorandum of said agreement
was signed by G. W. Hampton and himself, and that to
this agreement the said Susan A. E. Hampton, he is in-
formed and believes, agreed.   The action of Marvin vs.
Montgomery, he alleges, was never brought to judgment,
is not in any manner connected with the present suit, and
he denies that by his bringing said action he abandoned his
judgment of foreclosure.   Defendant denies that the mort-
gaged lands were bought with the proceeds of property de-
rived under the will of Nicholas Fox by Susan A. K.
Hampton, as alleged in the bill ; alleges that they were the
property of said Susan A. K. Hampton at the time of the
execution of the mortgage, subject to no trusts or claims
whatever in favor of complainant, Susan A. E. Hampton ;
that the larger portion of these lands were formerly a part
of the estate of the late Nicholas Fox ; were purchased by
him after his removal to Florida, and were not subject to
the trusts of his last will and testament ; that as to the
same he died intestate ; that upon his death they descended
to his heirs and were inherited by his daughter, the late

Susan A. K. Hampton; that her title thereto was a fee simple title, but the same were liable to her husband's debts, she never having taken the steps required by statute " to make the same her separate property." There was an injunction restraining the sale.

After replication, reference and the taking of testimony, there was a final decree for plaintiffs.

This decree vacated and set aside the judgment of foreclosure of the mortgage of J. M. & W. P. Marvin in the suit against Hampton, executor. The complaint therein was dismissed, the referee was prohibited from making a deed, and the injunction was made perpetual. The court decreed further that Susan A. E. Hampton take the land without prejudice to the rights of the other grandchildren of Nicholas Fox.

From this decree this appeal is taken by the defendant, Marvin.

*Pasco & Palmer* for Appellant.

*Angus Paterson* for Appellee.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

Plaintiffs, George W. and Susan A. E. Hampton, in possession of the land which is the subject of this controversy, assert an equitable title thereto in Susan A. E. Hampton, allege that the defendant, Marvin, is proceeding to sell the same under a judgment of foreclosure of a mortgage obtained by him. The record discloses that such judgment was obtained by Marvin in an action against William O. Hampton in his own right as heir-at-law of, and also as executor of the last will and testament of Susan A. K. Hampton, the said Susan A. K. Hampton having died without children, leaving him, her husband, surviving.

As to the mortgage which defendant seeks to foreclose.

While the record discloses that it was given to secure a joint and several note of William O. and Susan A. K. Hampton, husband and wife, the consideration for said note being miscellaneous family supplies furnished by the defendant, the plaintiffs insist, first, that such mortgage is void and of no effect as to the separate estate of the wife, there having been no separate acknowledgment made of its execution by the wife as required by the statute; second, that under the will of Nicholas Fox, Susan A. K. Hampton's estates in the land terminated with her life, and that at her death, under the circumstances then existing and under the provisions of the will, she, Susan A. E. Hampton, became entitled to an estate in fee simple therein; third, that Susan A. K. never made a will, and that W. O. Hampton never was executor of such will.

Plaintiffs prayed that the mortgage might be declared void, and the proceedings vacated and set aside. The decree of the chancellor set aside the mortgage, established the equitable interest of plaintiffs, and perpetually enjoined the sale in the foreclosure suit.

The case, therefore, is one where a party in possession of land seeks the aid of a court of equity to set aside a mortgage upon said land, and to enjoin a sale of the same under foreclosure proceedings had upon said mortgage, claiming a superior equitable interest therein.

The views of this court as to the general nature of such a proceeding in equity, which is a bill to prevent and remove a cloud upon plaintiffs' interest in the land, are to be found in the case of Sanford vs. Cloud, 17 Fla., 568, and we will not repeat them here at length.

We stated in that case that there was one rule of universal application in cases of this character, which was that equity will not act where the title is doubtful, and that he who comes into equity to get rid of a legal title must show

clearly the validity of his own title and the invalidity of his opponent's. If the plaintiffs show no title to protect, it is immaterial to them whether the mortgage was properly executed or whether it was void or voidable as to other parties.

Strictly speaking, plaintiffs seek here to establish an *equitable interest* in this land, and to enjoin this sale under the mortgage. The same rule as to the proof applies to this case.

What is the case made by the bill? The plaintiffs claim under and by virtue of the will of Nicholas Fox, the grandfather of Susan A. E. Hampton and the father of Susan A. K. Hampton. *This will contains no disposition of any land.* It is confined exclusively to bequests of slaves. Plaintiffs claim in their bill that certain slaves were bequeathed " to Susan A. K. Hampton for and during the term of her natural life, and at her death to her children; and in the event she died without issue the said property to go to his son, Edmond B. Fox, and his grandchildren then living; * * * that Susan A. K. Hampton died without issue; that the said Edmond B. Fox died," and that she was the only surviving grandchild " at the death of Susan A. K. Hampton, thereby being entitled to the property so bequeathed;" that during the life-time of the said Susan A. K. Hampton she and her husband desired to exchange the slave property mentioned in the will for land situated in Madison county, Florida, but could make the exchange only with the consent of plaintiff, Susan A. E. Hampton, she being the only surviving grandchild and entitled to said property in the event the said Susan A. K. Hampton died without issue, and that plaintiff, Susan A. E. Hampton, consented to said exchange provided she should have the same interest in the land so purchased as in the property bequeathed, and she

understood the land·was to have been conveyed in trust for that purpose.

·These are the allegations in the bill as to the interest of Susan A. E. Hampton.

What is the evidence in respect thereto ?

William P. Marvin, the defendant, the surviving member of the firm of J. M. & W. P. Marvin, to whom the note and mortgage was given by W. O. Hampton and his wife, S. A. K. Hampton, says that the understanding between him and W. O. Hampton and wife at the time the mortgage was given to him was that the land belonged to Mrs. S. A. K. Hampton, inherited from her father.

Geo. W. Hampton, one of the plaintiffs, says that the land in controversy is his wife's separate estate, and that it was not mentioned in the will of Nicholas Fox.

S. A. E. Hampton, one of the plaintiffs, says : " The land in controversy in this suit belongs to me. It is my separate estate. I brought suit against David Montgomery, administrator of Susan A. K. Hampton, and obtained a decree. I was in possession at the time as a renter. I had rented it from David Montgomery. I looked upon the land as belonging to me by virtue of a will of my grandfather, Nicholas Fox. I was a niece of Susan A. K. Hampton. She has been dead six or seven years. She was the daughter of Nicholas Fox. *She had the land in controversy ; she exchanged personal property for this land.* The personal property consisted of slaves. When she exchanged the property for the land, or sold the property and invested it in the land, she consulted me about it. This statement I make on my own personal knowledge. The parties who purchased the slaves refused to take them until I signed away my right to them. They came to my house for this purpose. I signed away my right to the slaves on condition that I was to have the same right in the land. The

proposition was made to me, *or to my father, who was alive at that time*, would I not rather have less slaves or land and a home."

Upon cross-examination this witness says: "*My grand-father, Nicholas Fox, purchased the land in controversy before his death, and lived on it, died on it, and was buried on it.* I claim not directly as a gift from Nicholas Fox, but indirectly, through the transfer of the slaves as above stated. I do not recollect in what year the slaves were sold. There were some six or seven of them. I do not remember how much they sold for. I did not see the money paid or invested in the land. Mr. Thomas Linton and Mrs. Reed were the purchasers of the slaves. My uncle was alone at the time, and *my grandfather made the arrangements and told me about it.* I do not remember in whose name the titles to the land were taken. *They are in my possession, but have not got them with me.*"

W. O. Hampton, the husband of Susan A. K. Hampton, says: "My wife left no will, and I never was executor. I regard the property as belonging to Geo. W. Hampton's wife, Susan A. E. Hampton, and family, by virtue of an agreement *on the sale of the negroes to raise money to satisfy a mortgage on the land and negroes, and to pay other debts of the estate.* She agreed to sign away her interest in the slaves, and did so with the understanding that the land was to be substituted in place of the slaves. The agreement with regard to the slaves was signed and delivered to T. J. Linton. *The other agreement was verbal.* I regarded the slaves as the property of the complainant, S. A. E. Hampton, in the event my wife, S. A. K. Hampton, should die leaving no children, by virtue of the will of her grandfather. My wife died without issue. The debts referred to in the direct examination as having been paid by the sale of the negroes were debts of the estate of Nicholas Fox and Ed-

mond Fox, who acted for his wife, Susannah Fox, in the management of this estate. The title to the land conveyed by the mortgage to Marvin was *in my wife, S. A. K. Hampton. She derived it, or at least a part of it, from her father, Nicholas Fox, and upon the death of her mother and brother, Edmond B. Fox.* This land was not mentioned in the will of Nicholas Fox. My wife came into possession of this land about five years after our marriage by virtue of the will."

Mrs. L. W. Fox, the mother of plaintiff, Susan A. E. Hampton, says: The land in controversy was purchased from Tom Linton by Nicholas Fox. She does not know what price he paid for it. The negro property mentioned in the will was sold, and the proceeds used to pay for the lands. Could not say exactly when the payments were made. That Mr. Linton told her repeatedly that old Mr. Fox bought the land of him.

There is a map in evidence which the parties agree show the entries of the land, as stated upon the county map of Madison county, to be as follows:

The SE $\frac{1}{4}$ of SE $\frac{1}{4}$ Sec. 4, the SW $\frac{1}{4}$ of SW $\frac{1}{4}$ of Sec. 3, the W $\frac{1}{2}$ of NE $\frac{1}{4}$ and part of E $\frac{1}{2}$ of SW $\frac{1}{4}$ of Sec. 9, were entered by E. B. Fox.

The W $\frac{1}{2}$ of NW $\frac{1}{4}$ of Sec. 10, the E $\frac{1}{2}$ of NE $\frac{1}{4}$ of Sec. 9, was entered by Susan Fox. The W $\frac{1}{2}$ of SE $\frac{1}{4}$, Sec. 9, appears not to be entered at all, and the remaining entries, constituting a considerable portion of the land, were made by J. W. O'Neal and S. W. Williams.

This is all of the testimony bearing upon the subject of interest in the land in the plaintiff, Susan A. E. Hampton.

Of this testimony it may be said *that it does not in any way establish the case made by the bill.* For this reason the law applicable to such a case need not be stated. The case made by the bill is one in which an exchange of slaves, in

which she had a life estate, is made for this land by Susan A. K. Hampton, Susan A. E. Hampton being entitled to the slaves upon her death without issue, she being the then only surviving grandchild of Nicholas Fox.

All the witnesses agree that the land was not mentioned in this will.   The plaintiff, Susan A. E. Hampton, testifies upon her direct examination that Susan A. K. Hampton had the land during her life, and that she exchanged the personal property mentioned in the will for it with her consent, the parties refusing to take the slaves until she signed away her right to them.   When this witness speaks more definitely she states that this proposition was made to her, *or to her father who was alive at that time*, would she not rather have " less slaves or land and a home."   She says again that her grandfather, Nicholas Fox, *purchased the land in controversy before his death, lived on it, died on it, and was buried on it.*   She says also that her grandfather made the arrangements and told her about it.   A very significant fact about the testimony of this witness is that she admits that the titles to this land are in her possession, and that while they are not produced she does produce a map containing the entries made of this land.   We can see no objection to this map of entries, but how the original entries were made is certainly less material in a contest between these parties than proof of the deed of conveyance, under and in subordination to which both of these parties claim.

W. O. Hampton states in general terms that there was a sale of negroes to raise money to satisfy a mortgage on the land *and negroes and to pay other debts of the estates* of Nicholas Fox and Edmond Fox, who acted for his wife, Susannah Fox, in the management of this estate.   He also states that the sale of the slaves was made in writing, but that the agreement as to the application of the moneys arising

therefrom was verbal. This witness again states that his wife derived the land, or *at least a part of it*, from her father, Nicholas Fox, upon the death of her mother and brother, Edmond B. Fox, and that she came into possession of the land about five years after his marriage. When he was married nowhere appears.

Mrs. L. W. Fox, the mother of Susan A. E. Hampton, and we presume the wife of the brother of Susan A. K. Hampton, says that the land in controversy was purchased from Tom Linton by Nicholas Fox.

A reasonable conclusion following from this testimony is that some of the money produced by the sale of the slaves to Linton was applied to the payment of sums due for the purchase of these lands, but whether that sum was ten dollars, one hundred dollars or one thousand is not established. The most that can be insisted upon is that the testimony establishes that this land was bought by Susan A. E. Hampton's grandfather, Nicholas Fox, of Thomas J. Linton, and that her grandfather " lived upon it." W. O. Hampton, while himself very indefinite, speaks with greater certainty than any other witness, and he says that the negroes were sold to raise money to satisfy a *mortgage on the land and negroes and to pay other debts of the estates of Nicholas Fox* and *Edmond Fox*, who acted for Susannah Fox in the management of this estate, that is, we presume, the estate of Nicholas Fox.

We do not propose to enter into elaborate discussion of the questions of fact here involved.

Admitting, for the purpose of disposing of this case, that the sale of these slaves was had after the death of Nicholas Fox, and that a partial application of the funds arising from this sale was made for the satisfaction of a mortgage upon this land, and that Susan A. E. Hampton would have to that extent an equitable interest which a court of equity

would protect against every one except a *bona fide* purchaser for value without notice, and that the defendant was not such purchaser, still it must be apparent here—first, that the conclusion that *all* of the land covered by this mortgage was thus paid for is not established; and second, that the amount thus applied may have been ten dollars or one thousand, and be consistent with it. In other words, the testimony does not establish any particular interest in the land, and the court cannot possible determine such interest, or make an intelligent and just decree in the premises.

The general rule upon this subject is that the substance of the case, as made by the pleadings, must be proved; that is, all the facts alleged upon the pleadings which are necessary to the case of the party alleging them, and which are not the subject of admissions, either in the pleadings or by agreement, must be established by evidence. The plaintiff must prove so much of the allegations of the bill as are necessary to entitle him to a decree. Daniell Chy. Pldg. and Pract., 857. Where he fails to do so, the bill should be dismissed. 27 Ill., 230; 3 Tenn. Chy., 223.

The bill and other pleadings in this case show that much importance is attached to certain suits which have been heretofore instituted as to this land. To the action of Geo. W. and Susan A. E. Hampton against David Montgomery, sheriff and *ex-officio* administrator of Susan A. K. Hampton and William O. Hampton, the defendant, Marvin, was originally a party defendant, but the suit was dismissed as to him before final hearing. Neither party presents a transcript of the record in that case. For that reason we cannot determine accurately the nature of the order dismissing the case as to him. The defendant, in his answer, states that "his defence was by demurrer," but he does not allege that the action was dismissed after hearing upon the demurrer, while the plaintiffs allege that the suit was dis-

missed as to him on account of his abandonment of his action to foreclose his mortgage.

We cannot see that the plaintiffs here can insist that their judgment against Montgomery can bind this defendant, because he was no party thereto. They had dismissed their bill as to him. Nor can the defendant upon the record before this court insist that the order dismissing as to him was an adjudication of a superior right in him under his mortgage. A defence of this kind proceeds upon the ground that the same matter was in issue in the former suit, and when such defence is relied upon the defendant should at least set forth so much of the former proceeding as will suffice to show that the same point was then in issue, and should aver that the allegations as to the title to relief against him were substantially the same in the second bill as in the first. In addition to this, a decree, to be a bar, must be in its nature final as to the subject-matter, or be so made by subsequent order. Story's Eq. Pldg., §791 ; Daniell Chy. Prac. & Pldg., §§659-660.

The defendant in this case fails to set forth with sufficient certainty the nature of the order made in the case in which he insists the questions here involved were as to him determined. He does not even set forth the order itself. It devolved upon the defendant to make and prove this defence in a proper manner to make it available here.

As to the other suits. To the actions by Marvin against Hampton as executor, and in his own right and against Montgomery as administrator, plaintiffs were not parties, and are therefore not bound by the decree or judgment.

The injunction obtained by Montgomery against Marvin was dissolved ; that proceeding therefore cannot affect either of the parties here.

The merits of this controversy are to be found entirely outside of the proceedings in these suits.

The decree is reversed, and the case will be remanded with directions to dismiss the bill.