## A. S. Nims, Appellant, vs. C. E. Nims, Appellee.

1. When one partner files a bill against his copartner, praying therein a settlement of all the partnership matters, individual indebtedness from the defendant to the complainant, existing before the formation of the partnership between them and not alleged in the bill to have entered into or formed a part of their partnership agreement, either at the inception of the partnership or subsequently, cannot be taken into account in a settlement between them.

2. The burden of proof in a suit for the settlement of partnership accounts is on the complainant, and if he cannot furnish evidence sufficient to enable the master to state an account, his suit, so far as the settlement of accounts is concerned, necessarily fails.

3. Until it is shown by proper allegations and proof thereof that there has been either a profit or a loss in the partnership affairs a court cannot say whether there is anything to divide.

4. Upon a dissolution and settlement of a partnership the amounts advanced individually for the joint business by each partner should be ascertained and a balance allowed the one making the greatest advances of the excess of his advances over the advances of his copartner, which excess is a lien on the partnership property, and on a sale by a master of such property, and the payment of such excess to the partner entitled thereto, the remainder should be divided between the partners according to their respective interests.

5. When a deed to land is made jointly to two persons, in the absence of proof to the contrary it will be presumed that each one paid his proportion of the purchase money.

Appeal from the Circuit Court for Leon county.

The facts of the case are stated in the opinion.

*R. W. Williams* for Appellant.

*D. S. Walker, Jr.*, for Appellee.

THE CHIEF JUSTICE delivered the opinion of the court:

C. E. Nims, the appellee, filed his bill in equity in the Circuit Court of Leon county against A. S. Nims, in which he alleges that on the 11th day of February, 1874, the defendant and orator formed a copartnership to be carried on in the firm name of A. S. & C. E. Nims for the purpose of manufacturing and selling lumber. That they were to be equal partners and each was to furnish one-half the funds necessary to commence the business. That they purchased from John Bradford, of Leon county, an engine, saw and mill carriage and boilers for $1,200. Two hundred dollars of which was to be paid in cash to said Bradford and the remainder in two years. That your orator paid the said sum of two hundred dollars in cash to said Bradford. That at the time of paying Bradford he also gave to the defendant one hundred dollars in cash, and two orders amounting to $76, which defendant collected, and which sums were to be used for the purposes of their said business. That this was all, or mostly all, that was necessary to commence their said business.

That said mill was immediately removed to Wakulla county and erected on lands purchased by the firm, and on the 10th of June, 1874, the business of sawing and selling lumber was begun. That at the inception of the business the firm bought two tracts of land in said county, amounting to one thousand acres, for seven hundred and thirty dollars. That there were four mules employed in the business at the commencement, three of which belonged to the defendant and one to orator.

That there was a lumber yard established in Tallahassee, where the defendant lived, by the firm for the purpose of selling the lumber sawed by said mill. That by the agree-

ment the defendant was to have charge of this yard and sell the lumber, and that orator was to have charge of and run the mill. That the said business was carried on from the 3d day of June, A. D. 1874, until about the 3d of January, 1882, and was very profitable; that the purchase money due Bradford for the machinery and the lands bought as aforesaid was paid with money arising from said business, and that there was also purchased by said firm nine mules and one log cart and two wagons, now belonging to said firm.

That he furnished to defendant on an average each month from the time of the commencement 45,500 feet of lumber of all grades, of the value of $656.75, amounting in aggregate sums to 3,995,000 feet of lumber of the value of $55,267. That the defendant has failed to keep a proper account of the lumber received and disposed of by him, and that it is impossible to ascertain from his accounts the manner of its disposition. That defendant used large quantities of the lumber, amounting to $1,000 in value, in building houses for himself without keeping an account of the same. That at the time of the commencement of said business, and for several years before, the defendant was very much embarrassed in his business and unable to meet his obligations. "As evidence of the embarrassment of said defendant," orator alleges that in January, 1871, he furnished defendant lumber from the mill of Drew & Bucki, which with the freight added cost orator $607.64, for which he holds defendant's obligation. That defendant in November, 1868, gave to orator his note for $300 for labor performed for him. November 1st, 1872, defendant gave orator his note for $92.40 for borrowed money, no part of which has ever been paid.

Orator " further shows in proof of the embarrassed condition of the defendant " that he was keeping a small gen-

eral merchandise store in Tallahassee in 1873, while your orator was employed at a salary of one thousand dollars a year with Drew & Bucki in the saw mill business at Ella-ville, and at the request of defendant, who represented himself as much embarrassed, he arranged with Drew & Bucki, who were indebted to him, to advance goods to the defendant to keep up his store; and that during the month of February, 1873, said Drew & Bucki furnished the defendant, though merchants in New York, $912.25 worth of goods, which sum was deducted from orator's wages by Drew & Bucki, and of which no part has ever been paid him by the defendant. That soon after the commencement of said business defendant began to assume a style of living which indicated a marked improvement in his financial condition, and has ever since been considered a prosperous man. That complainant has never received exceeding two thouand dollars from the business during the eight years. That on the 1st day of January, A. D. 1875, and every subsequent January to the time of orator's quitting the mill in 1882, he has endeavored to induce the defendant to come to a settlement of their affairs, but each time he has been for one reason or another induced to forego his rights, believing that the defendant would finally do him justice. That in January, 1882, he insisted on a settlement, when the defendant told him there was nothing coming to him, and he quit the mill with the understanding that his brother Egbert was to run it and orator was to receive one-half the profits from it, and if at the end of one month he was not satisfied with the profits of the mill the arrangement was to be at an end.

That at the end of the month defendant informed him that the mill had made nothing. Orator expressed to defendant his discontent, and demanded that the mill should

be stopped, the partnership property be sold and a settlement made.

The bill prays that a special master be appointed to take an account of all the copartnership transactions and dealings from the commencement thereof, and the amount of money contributed to the copartnership by both the complainant and defendant; also the amount of lumber sawed by said mill and disposed of by the defendant, the amount of money received therefor, and the amount of lumber not sold which was received by the defendant. That the defendant be decreed to pay to orator upon said accounting whatever may be found due him, and that the partnership be dissolved. That the partnership property be sold forthwith and the proceeds disposed of as the court might see fit. The bill also prayed that the defendant be restrained from collecting or receiving the partnership debts, and from continuing longer to operate the said mill, also from selling any lumber he may now have on hand, or selling or removing any copartnership property, and such other and further relief as may be equitable and just.

An application having been made to the Chancellor on the 3d day of July for an injunction as prayed in the bill, after notice to defendant, the Chancellor postponed a hearing until the 13th of the same month, and allowed the defendant in the mean time to file his answer.

The answer of the defendant denies that he formed a copartnership with the complainant, and alleges that he merely employed him to manage the mill and was to give him for such service one-half of the net profits in lieu of a salary. Defendant denies that the business was carried on in the name of A. S. & C. E. Nims. Defendant denies also that the complainant delivered to him or sawed the amount of lumber alleged in the bill, to-wit: 3,995,000 feet. He also denies that he has at any time declined or

refused to allow complainant a full settlement of any accounts existing between them, or that complainant has not received more than $2,000 from the business during its existence. Defendant admits that he was indebted to complainant; he thinks the sum about $1,800. That his anxiety to pay the complainant, who was his son, induced him to employ complainant in the capacity of sawyer and manager of said mill, but that instead of proposing to pay for such employment at a fixed salary he agreed with complainant to give him one-half of the net proceeds of the sale of lumber manufactured at said mill. "The reason why one-half of the net proceeds of the sale of lumber was agreed upon, instead of a fixed salary at a sum more commensurate with the actual value of complainant's services, was on account of the debt due complainant from defendant, which by *this arrangement was liquidated and considered settled.*"

That a lumber yard was established in Tallahassee and that the defendant invested considerable sums in teams and wagons and hauled lumber from the mill to Tallahassee. That every charge of whatever nature attending the carrying on the business, such as the original cost of the land, mill boilers, fixtures, teams, wagons, log carts, taxes, labor and provisions, except two hundred dollars paid to Bradford, have been paid by the defendant. That the amount of said expenditures have largely exceeded the value of the proceeds from the sale of lumber. That at no time since the mill commenced to run has it been out of his debt, and that it has made no profits. That complainant was careless and inattentive to the business, and was an incompetent sawyer. That complainant had sold a large quantity of lumber from the mill and received the proceeds thereof, amounting in his belief to $4,000, no part of which complainant has accounted for. Defendant admits that

the deeds to the land were made jointly to him and the complainant, but that it was done without his knowledge or consent. That he paid " every farthing of the purchase money " out of his private means. That at the time the land was paid for defendant was confined to his bed by sickness, and if cognizant of the fact that the land was conveyed to him and his son jointly, which he says he cannot remember, he was too ill to consider the matter at the time. That during the running of the mill the complainant was also engaged in farming on the premises belonging to the defendant, and has sold and disposed of the crops made on the place; that he has made in the last five years thirty bales of cotton besides other crops. That the complainant used the laborers and teams employed at the mill and the provender provided for them, all of which were the property of defendant alone, to make these crops, and they were improperly used by complainant. That the complainant has at all times had free access to the books containing the business transactions of complainant and defendant, and at no time has made any objections to the way in which they were kept.

The Chancellor, after the coming in of the answer, granted an injunction restraining the defendant from removing, selling or in anywise disposing of any of the alleged partnership property, and appointed a special master to take and state an account between the parties. The master made a report showing the existence of a partnership and an indebtedness from defendant to complainant of $3,574.29. The report was confirmed by the Chancellor.

The defendant appealed therefrom and the decree was reversed. See Nims vs. Nims, 20 Fla., 204.

The case coming on for hearing again, the Chancellor decreed that there was an equal partnership existing be-

tween the parties and again referred the case to a special master to take and state an account between the parties.

The master reported an indebtedness from defendant to complainant of $9,766.79, which was reduced by the Chancellor to $5,680.81, and a final decree rendered therefor, and a sale decreed of the property to pay said indebtedness. From this decree the defendant appealed.

This bill was filed for the settlement of partnership accounts. The individual items of indebtedness from the defendant to complainant, amounting to $1,955.73, mentioned in the bill and existing before the commencement of the partnership and having no relation to it, and not claimed by any allegation in the bill to form a part of complainant's case for which he seeks relief, was improperly taken into account by the master and the decree therefore was erroneous.

From the language employed and the alleged connection of this indebtedness with the financial condition of the defendant, it would appear that it was only intended to show the condition of the defendant before the commencement of the partnership as contrasted with his condition after its formation, the former being straightened, the latter prosperous, and to deduce therefrom the conclusion that the mill business was the source of the defendant's prosperity. The bill wherever it refers to this indebtedness uses it only " as an evidence of the embarassment " of the defendant. But if it were claimed in the bill as an indebtedness for which relief was sought, it would be without the bounds of equity jurisdiction. It was a simple indebtedness for the collection of which the law afforded an adequate remedy. Robertson vs. Baker & McRae, 11 Fla., 230. We think the evidence reported by the master clearly sustains the Chancellor in decreeing that an equal partnership existed between the complainant and defendant.

From the allegations and proof presented by the record, and the meagre data before us, we confess our inability to arrive at a satisfactory conclusion as to the state of accounts between these contending parties. It is claimed, with some degree of probability, by the complainant that the books kept by the defendant do not contain a full account of the transactions between the parties. The complainant did not keep any books or account of the product of the mill for the seven and a half years that he ran it. The only account he kept was of lumber he furnished to other parties than the defendant. When parties carry on for a number of years a complicated partnership business in this loose manner, preserving no daily, weekly or monthly record or written entry of how much lumber was cut by the mill, and only a loosely kept book of the amount of cash realized from sales of lumber, they must not complain if when a difference arises between them the courts are as unable to make a settlement of their affairs from want of proven facts as they are themselves.

It is incumbent on the complainant to prove his case, and by such testimony as will furnish the court with reliable evidence upon which to found an intelligible decree. The evidence of complainant is of a very vague and unsatisfactory character, not founded on any account of lumber sawed by the mill, but how much two wagons most of the time and at sometimes a greater number hauled for seven years and a half, deducting for holidays and one day in each month for bad weather. If this evidence was not contradicted by the answer and witnesses, as it is, we do not see how we could conscientiously make it the basis of a decree. Contradicted, as it is, by the evidence, it is of little or no value. It has more the appearance of a calculation made before the commencement of the business as to what it might do, than evidence of what it had done. The

master says in his report " that both parties appear to have received more benefit from the mill business than appears from the evidence produced; that from the books and accounts filed it is impossible to arrive at the exact amounts ; the complainant in his bill alleges that he furnished more lumber for the business than the books of either party shows to have been furnished, and the defendant appears to have received considerable more lumber than he accounts for; and the benefits that the answer of defendant charges the complainant to have received from the farming operations were not proven by the testimony." And we would add that this same master, who is an expert accountant, in the two reports he has made in the case on the same identical evidence, has varied several thousand dollars in the amount he found to be due the complainant.

In the case of Maupin vs. Daniels, 3 Tenn. Chancery Reports, 223, Chancellor Cooper says: " The liability of a partner depends entirely upon the result of a general partnership account. The burden of proof is on the complainant, and if he cannot furnish evidence sufficient to enable the master to state a partnership account his suit necessarily fails ;" again, " until we know whether there has been a profit or a loss, we cannot tell whether there is anything to divide." See also Marvin vs. Hampton, 18 Fla., 131.

In Vermillion vs. Bailey, 27 Ill., 230, the court strongly sustains the same principle, and acknowledges that it is unable to decide the case before it on the evidence and allegation.

The data set forth by the defendant is equally as unsatisfactory. Books which only contained an account of the money realized from the sale of the lumber—lumber used by him in building and repairing houses—was not charged by him on the books. He states that he considered all the lumber as his own, " it being compensated for other-

wise." He says generally that he paid all expenses of the
mill, that he sold real estate and put the proceeds of it into
the business, but he does not state any amount so put in,
the time when, nor does he show any vouchers or receipts.
This is as uncertain as the case made by the complainant.
What we have said has reference to making a decree in
which should be ascertained the general result of the part-
nership transactions.   As the evidence shows no profit
there can be no division of profits.

One more question arises : the partnership was not limited
as to time and is by the act of the complainant dissolved.
The bill prays for the sale of the partnership property.   So
far as this is concerned we have more reliable evidence for
ascertaining the amount contributed by the complainant to
the capital stock.   The evidence shows the complainant ad-
vanced $200 in cash to pay for the machinery, that he paid
over to defendant one hundred dollars in cash on account
of the mill, that he gave him two orders, one for forty dol-
lars, the other for thirty-six dollars.

The defendant says that one of these orders, the one on
Brokaw for forty dollars, was never paid.   Whether it
was or not makes no material difference ; the sum is only
lessened by a comparatively small amount.   It is clear
that the complainant put this amount of money into the
business.   The defendant claims that he paid out of his
private means all the expenses of purchasing and starting
the mill.   He shows no vouchers, no items and no dates.
His answer is very much weakened, so far as this state-
ment is concerned, by his statement in his evidence that
" I never had any money but my individual money.   I
suppose when I received money from the mill I considered
it my money," and by his admission in his evidence that
six hundred dollars of the $1,000 purchase money remain-
ing due to Bradford was paid by transferring to him an

account on The Tallahassee Manufacturing Company, due for lumber sawed by the mill, and by the clear proof that complainant furnished at least $136 of the money, the whole of which he claims by general statement to have furnished, except $200 paid Bradford, and by defendant's statement hereafter quoted given in his evidence that he was to pay complainant's half of the expenses out of complainant's means in his hands, amounting to $1,500. The whole cost of the enterprise was, so far as the evidence discloses—land, $760; mill and machinery, $1,200; total, $1,960, except one mule owned by complainant, and three mules, a log cart and wagon owned by defendant, which were put into the business. If there was more property purchased or expenses incurred it is not shown by amounts, dates, items or vouchers. Of this complainant furnished $336. The evidence shows that $600 was paid by an account for lumber sawed at the mill, and we think that we can reasonably infer, in the absence of proof to the contrary, the answer for the reason above stated not being regarded as evidence in this behalf, that the remainder of the purchase money due Bradford was paid by the products of the mill. We are strengthened in this conclusion by the knowledge imparted to us by this record of the status of matters between the father, who is defendant, and the son, who is complainant, at the inception of the partnership. Defendant was indebted to his son for work done for him, for money loaned him, for lumber furnished him from Drew & Bucki, and finally for goods bought for him to sustain him in his mercantile business, in a sum amounting in the aggregate to about $2,000, of which he has received nothing, and which defendant strangely says in his answer was considered paid and settled by his promising to give his son one-half of the profits of the mill, at which mill his son was to perform the duties of sawyer and manager.

The probability of this statement is shaken by the common experience of any one who knows anything of business men and their methods. It is shaken further by the fact that the son put $336 additional cash into the enterprise, making over $2,300, and for what—for the privilege of doing the greater part of the work in an enterprise the whole cost of which, making every allowance, could not have been over $4,000, for one-half of the net profits, while the property was to belong to the father.

In defendant's evidence he states a different state of affairs. Speaking of the formation of the partnership, he says: " I was in possession of all of C. E. Nims' (the claimant) means." Question—" What means of C. E. Nims were you in possession of ?" Answer—" About $1,500 of different items." " C. E. Nims was to have half of the profits after expenses were paid." Question—" What was the consideration of your giving him half of the profits ?" Answer—" That he should bear half of all the expenses of all kinds, and to give him employment, and these expenses were to be paid by me out of means of C. E. Nims I had in my possession." As to the land purchased by them, and for which a joint deed was made to them, in the absence of proof that either one of them advanced the purchase money, it must be presumed that each one contributed his proportionate share. We think the complainant is justly entitled to one-half of the partnership property on hand at the date he ceased his connection with the mill. The decree is set aside, and the case remanded with instructions to the Circuit Judge to refer it to a master in chancery or a special master to ascertain and report: 1st. The value of the three mules, one log cart, and one two-horse wagon which the evidence shows were put into the partnership business by the defendant, A. S. Nims, at the commence-

ment thereof; 2d. To ascertain and report the value of the mule furnished by the complainant and against the value of the mules, log cart and wagon of defendant to set off the value of the mule furnished by complainant, together with the advances of complainant, to-wit: the sum of $336.00, and to ascertain which sum is in excess of the other, and on that excess to allow to the party in whose favor it may, be, interest at 8 per cent. per annum from the commencement of the partnership to the date of his report; 3d. To ascertain and report what property was on hand belonging to the partnership at the time complainant ceased his connection with it, of every kind and description, and whether defendant has disposed of any of it and for what sum, and if disposed of by defendant to charge him with the value thereof; 4th. To strike a final balance between the parties, which shall be a lien on the property in behalf of the party in whose favor it may be; 5th. That the master, after legally advertising the time, place and terms of sale, sell all the property to the highest bidder for cash, and after deducting therefrom the amount of the balance as above, and paying it to the party entitled thereto, to divide the remainder between the complainant and the defendant equally. The defendant must pay the costs of suit except the costs of this appeal, which must be paid by the appellee.