ENOS C. FISH

v.

CHARLES A. THOMPSON ET AL.

October Term, 1895.

*Partership.   What Constitutes.   Injunction Damages.*

Thompson and Freeman were partners in a mercantile business. Freeman was indebted to the orator and assigned to him for the purpose of securing that indebtedness his entire interest in the business. The orator took possession and Freeman retired from the business. It was agreed between the orator and Thompson that the goods of the partnership should be converted into money as speedily as possible, the partnership debts satisfied, and the balance divided between Thompson and the orator. Neither party was able to find a purchaser for the goods and the business was continued as before under the management of Thompson. A new firm name was adopted with the consent of the orator. New goods were bought with his knowledge to replenish the stock. Out of the money received Thompson paid indiscriminately the bills of the old partnership and those for new goods bought. Sometime after taking the assignment the orator, upon the application of Thompson, paid in a sum to equalize the amount which the concern owed Thompson. Thompson borrowed $1,000 and advanced small sums of his own which were used indiscriminately in the business. After continuing the business for some seven months Thompson fell sick and turned the property over to the orator, who continued to sell goods for about a month and then disposed of the entire stock. With the avails coming into his hands while in the management of the business he paid debts of the old partnership and bills for new

goods indiscriminately and had a balance in his hands at the time of the hearing.  *Held*

1.  The orator and Thompson were not partners, for the interest of the orator was that of a security holder merely.

2.  The orator must account for the balance remaining in his hands after taking out the price of his services in closing out the business.

3.  The orator cannot recover of Thompson for the $600 advanced, but this must stand subsequent to the lien of partnership debts and upon a parity with the indebtedness to Thompson.

4.  Thompson cannot recover of the orator for the money borrowed by him and used in the business, for the relation between the parties growing out of their joint ownership of the goods would not justify him in borrowing money on this account.

5.  From the assets of the business the partnership debts and the debts contracted by Thompson in managing the business must first be paid, then the advances of Thompson and the orator, and the balance, if any, divided between them.

6.  The defendant Slason held a note signed with the new firm name for an indebtedness of the old partnership of Thompson & Freeman, and the defendant Tuttle, a note for $1,000 for the money borrowed by Thompson, signed by the new firm name.  The orator alleged that these notes were fraudulent, that it was the purpose of Thompson and these two defendants to attach and apply the assets of the partnership to their payment, and he obtained upon the strength of these allegations an injunction restraining the defendants, Slason and Tuttle, from attaching the partnership property upon these debts.  The master found that the Slason and Tuttle notes were valid and that the orator had no reason to suppose otherwise when he brought this suit.  *Held*, that if the defendants, Slason and Tuttle, had been prevented from availing themselves of the assets of the partnership until these had been otherwise appropriated, by the wanton act of the orator in obtaining the injunction, and if they had thereby gained any right of action against the orator, it would be a matter of injunction damages.

Bill in chancery.  Heard upon a master's report and the pleadings at the March term, 1895, Rutland county.

THOMPSON, Chancellor, decreed *pro forma* for the orator.. The defendants appeal.

The orator alleged in substance that the defendant Thompson and one Freeman were partners in a mercantile business. and that he had become liable for Freeman to a considerable amount on account of the capital which Freeman originally had in the business; that for the purpose of securing him, Freeman executed, in April, 1892, to the orator a. chattel mortgage of his interest in the partnership stock; · that this mortgage was not at first delivered and that about: May 1, 1892, Freeman assigned to the orator absolutely his entire interest in all the partnership assets and also delivered to him the chattel mortgage; that the orator thereby became the joint owner of Freeman's interest in the partnership property and assets; and that it was understood between him and Thompson that the goods should be converted into money and the accounts collected, the assets used first for paying the indebtedness of the partnership and the balance divided between Thompson and the orator; that instead of disposing of the goods, Thompson had continued to run the business, had bought new goods, had collected money due on account, had failed to pay the debts of Thompson and Freeman and appropriated to his own use the assets of the company; that the orator had loaned Thompson $600 for use in the business; that after continuing the business for some months the defendant Thompson became sick and turned the business over to the orator and that the orator had disposed of the same to a considerable extent; that soon after the transfer by Freeman to the orator the said Thompson, began to transact business under the firm name of C. A. Thompson & Co.; that the defendant Tuttle had a note in, the sum of more than $1000 signed by the firm name of C., A. Thompson & Co., and that the defendant Slason held a note for more than $1500 also signed by the firm name of C. A. Thompson & Co.; that both of these persons were rela-

tives of the defendant Thompson, that the notes were fraudulent and given without consideration and ought not to be a lien upon said assets ; that the defendants were about to attach said partnership assets and apply them in payment of said notes, whereas such assets ought to be applied in payment of the indebtedness of Thompson and Freeman then amounting to about $1300, and to the payment of said $600 loaned by the orator to Thompson.

The orator prayed for and obtained an injunction restraining the defendant Thompson from intermeddling with the assets of the partnership and the defendants Slason and Tuttle from attaching such assets upon their notes. The defendant Thompson filed an answer and also a cross-bill claiming that after receiving the assignment from Freeman the orator took Freeman's place and became a partner in the business ; that as such he was responsible for the indebtedness of the firm C. A. Thompson & Co., incurred in conducting that business, and also for the payment of the original indebtedness of Thompson & Freeman ; that the $600 advanced was not a loan to Thompson or to the partnership but was for the purpose of equalizing the interest of the two in the concern. The defendant Thompson prayed that the orator might be compelled to account as a partner.

The master found that after the transfer, Freeman retired from the business as a partner, although he remained in the store for a time as a clerk ; that the sole object of the orator in taking the assignment from Freeman was to obtain security for his obligations on account of Freeman and that both he and Freeman expected if any balance remained after satisfying these obligations it would be passed over to Freeman ; that both the orator and Thompson endeavored to dispose of the entire stock but were unable to do so ; that it was thought best to continue the business until the stock could be disposed of ; and that Thompson remained in charge of the store and in the management of the business in that view ; that as the

stock ran low in a given part he replenished it with new goods, and that in so doing he exercised good judgment and good faith; that with the money he received he paid indiscriminately bills due from the old firm of Thompson & Freeman, and bills contracted by the new firm C. A. Thompson & Co.; that the new firm title was adopted shortly after the orator took Freeman's interest, with the knowledge and consent of the orator; that some time after the orator obtained this assignment the defendant Thompson applied to him, saying that there were debts then pressing the company, that the company owed him, Thompson, some $600 and that the orator must contribute a like amount, whereupon the orator did so; that this was not a loan to Thompson or to the company, C. A. Thompson & Co., but was a contribution by the orator for the purpose of equalizing the amount which Thompson then had in the business; that Thompson continued the business in this way from March 1, 1892, until January 1, 1893, when he was taken sick and became unable to go on with it and that in consequence he turned it over to the orator who took charge of it, sold the goods, collected the sums due the concern, deposited money in the name of C. A. Thompson & Co., and drew checks by that name, paid indiscriminately debts of Thompson & Freeman and C. A. Thompson & Co.; that the orator finally disposed of all the goods; that he had remaining in his hands at the time of the hearing $294.29 and that his services in connection with the business were reasonably worth $150.

It was further found that the Slason note was for an indebtedness of the firm Thompson & Freeman; that the Tuttle note was for $1000 loaned Thompson by Mrs. Tuttle and used by him in the business of C. A. Thompson & Co.; that both these notes were *bona fide*, and that the orator had no reasonable cause to believe otherwise when he brought his suit and obtained his injunction; that subse-

quently to the service of said injunction the orator paid notes of C. A. Thompson & Co., upon which he was personally liable as indorser to the amount of $1300. It further appeared that substantially all the assets were represented by the amount left remaining in the orator's hands.

*J. C. Baker* for the orator.

To constitute a partnership there must be an arrangement to share in the ultimate profit and loss of the busines. *Bowman* v. *Bailey*, 10 Vt. 170; *Clark* v. *Smith*, 52 Vt. 529; *Flint* v. *Marble Co.*, 53 Vt. 669.

*C. A. Prouty* for the defendants.

Upon the facts reported the orator and Thompson were partners. That the word partnership was never used between them is immaterial if the relation in fact existed. Bates, Part. s. 17; *Duryea* v. *Whitcomb*, 31 Vt. 395; *Tyler* v. *Scott*, 45 Vt. 261.

These two persons furnished a joint capital and ultimately shared in the profits and losses. The fact that the interest of the orator was to be disposed of by him in a certain way can make no difference as between the partners. Bates, Part. ss. 26, 31; *Morse* v. *Richmond*, 97 Ill. 303; *Mohawk Nat'l Bank* v. *Van Slyck*, 29 Hun. 188; *Brigham* v. *Dana*, 29 Vt. 1.

ROWELL, J. It is manifest that the bill cannot be maintained against the defendants Tuttle and Slason, for the allegations relied upon for relief against them are negatived by the findings of the master. Nor do these findings show that the orator and the defendant Thompson were partners, as the latter claims. Thompson and Freeman were partners in business. The orator signed with Freeman for money that went into the concern, and becoming alarmed lest he should lose thereby,

he consulted Thompson about the matter, and there-
upon procured a chattel mortgage and an assign-
ment from Freeman of his entire interest in the part-
nership for the sole purpose of security against such loss.
At the time of the assignment it was understood between
Thompson and the orator that the business should be closed
out and sold as a whole as soon as possible, the debts paid,
and the remainder divided between them according to their
several interests.   Freeman and the orator understood that
if anything remained in the orator's hands after such divi-
sion and his indemnity, it should belong to Freeman.   Free-
man did not continue with the firm as an active member,
but only as a clerk for wages, and the partnership was soon
dissolved by mutual consent, for prudential reasons, and the
firm name of C. A. Thompson & Co. adopted, the orator
objecting to have his name appear in connection therewith.
The business was thereafter carried on in the new name,
Thompson being the managing man until his health failed,
when he turned the business over to the orator, who took
charge and proceeded to dispose of the property, buying no
more goods, and closed out the stock in about two months.
The relation that the orator originally sustained to Thomp-
son and to the property and the business was never changed,
and was never, so far as appears, understood by them to be
changed, and Thompson knew what that relation was from
the first, as the orator consulted him about the matter before
he took his assignment.   The orator was a mere security-
holder throughout, and therefore, as matter of law, any
residue in his hands would belong to Freeman, as they un-
derstood it would.   He could in no event participate in the
profits as a principal trader in the management of the busi-
ness, which is essential to a partnership, but does not of
itself as matter of law, constitute a partnership, though a
most important element in determining whether one exists
or not.   Hence as the orator had no community of interest

in the profits as such principal, there was no partnership between him and Thompson. A community of interest by way of security for the payment of money by Freeman is not enough. Thus, in *Mollow* v. *The Court of Wards*, L. R. 4 P. C. 419, the person sought to be charged as a partner advanced large sums of money to a firm of merchants, and took as a security a charge of twenty per cent. commission on all the profits made by the firm until the whole amount of the debt due him should be paid off, with twelve per cent. interest on all cash advances that had been or might be thereafter made by him to the firm; and large powers of control were conferred upon him, but he had no initiative power. The court held that the contract was really and in substance what it purported to be, namely, one of loan and security between debtors and their creditor, and not one of partnership; and said that if cases should arise where persons, under the guise of such an arrangement, were really trading as principals, and putting forward as ostensible traders others who were really their agents, the law would look to the body and substance of the arrangement, and fasten responsibility on the parties according to their true and real character.

The case stands for disposition, therefore, between Thompson and the orator on the basis of a joint ownership between them of the character shown, and not on the basis that they were partners; and as no question is made as to the snfficiency of the pleadings for such relief as they may be entitled to, the case stands for consideration in this behalf on its merits, leaving the parties to apply below for such amendments, if any, as they may deem necessary.

It makes no practical difference whether the firm was dissolved by Freeman's assignment to the orator or by mutual consent soon after; for if by the former, the rights and powers of the firm rested wholly in Thompson as far as necessary to enable him to properly administer his *quasi*

trust of settling the business and accounting to the orator for Freeman's share of the residue remaining for distribution; and if by the latter, Thompson was, as the case shows, the liquidating partner, and as such he was the agent of the late firm to collect and adjust its bills receivable, to convert its assets into money, to discharge its outstanding liabilities, and to pay over to the orator Freeman's share of the surplus; and in either view he has the right that partners generally have in respect of being reimbursed for advances, which is, to have a lien on the assets, and after the partnership debts are satisfied, to be paid before the surplus is divided.

The master finds that the orator has in his hands a balance of $294.29, derived from the business while he had charge of it. This he must account for. It is conceded, however, that he may deduct therefrom the sum of $150, due him for services in closing out the business, which leaves $144.29 to be accounted for.

The orator claims a personal decree against Thompson for $600 that he put into the concern in the manner following: Thompson applied to him and said that the debts were pressing and that he must furnish more money on that account and to equalize what he himself had advanced; and thereupon the orator advanced $600, taking no evidence of indebtedness, and the amount was credited to him on the books of the concern in his regular account. He claimed before the master that this was a loan to Thompson; but the master finds that he advanced the money for the purpose claimed by Thompson, namely, to pay the pressing debts of the concern, and that Thompson advanced a like amount for the same purpose. On this finding the orator cannot have a personal decree against Thompson for this money. He must be taken to have assumed the risk of getting his pay out of the assets, the same as Thompson did; and this is the fair intendment of the finding, as his claim of a loan to

Thompson is negatived. But he has a lien on the assets for reimbursement, subject, however, to the rights of partnership creditors, for in the bill he expressly subordinates his rights to theirs, and the law does the same. Nor are his rights in this behalf superior to Thompson's rights, for they appear by the finding to have intended to put themselves on an equality in this matter, as one object of the orator's advance was to equal Thompson's advance. The orator claims no other allowances.

The defendant Thompson claims under his cross-bill, that if there was no partnership between him and the orator, their joint ownership of the property was such as to make the orator liable for one-half of all the debts and expenses necessarily incurred in the management of the business, of which there are outstanding and unpaid the sum of $173.21 ; that in addition thereto he is liable for one-half of the $1000 for which the Tuttle note was given by C. A. Thompson & Co., as the master has found that that money was used by Thompson in paying debts of Thompson & Freeman that were a lien on the goods and in managing the business ; and that the orator should pay to him one-half of these sums, aggregating $1173.21, less what may be realized on the $320 of accounts due to Thompson & Co., although he is not liable on the Tuttle note nor to the creditors to whom the other bills are due. But this claim cannot be maintained. Although by his assignment the orator became a joint owner with Thompson, yet he did not thereby acquire a right to joint possession of the partnership property nor to a joint management and control of the business. On dissolution by death, the surviving partner settles the partnership affairs. So on dissolution by the sale of one partner of his interest or by his being adjudged bankrupt or insolvent, the other partner is entitled to the exclusive possession of the partnership property and the exclusive management and control of the business for the purpose of winding it up.

*Harvey* v. *Crickett*, 5 Maul & Sel. 336; *Renton* v. *Chap-lin*, 9 N. J. Eq. 62 ; Note to *Gilmore* v. *Ham*, 40 Am. St. Rep. 571. And if the dissolution in this case is regarded as having been by mutual consent and not by the assignment to the orator, Thompson's rights and authority in the premises would be practically the same as against the orator, as if he was the liquidating partner. So in either view he had no authority in law to charge the orator in this behalf, and no authority in fact appears ; and there is no principle of equity on which the orator can be charged, as he had no right to participate in the management of the business, nor any power of control over Thompson in respect of it, except through the medium of the Court of Chancery, which, for cause shown, would interfere by appointing a receiver.

The other claims made by the defendant Thompson are based upon the idea of a partnership between him and the orator ; and as none existed, they cannot be maintained.

The defendants Tuttle and Slason claim that the case shows that the orator wantonly obtained the injunction against their enforcing their notes against the partnership property and against Thompson's paying the same thereout, and that under the protection of the injunction he disposed of the property and used the avails thereof for his own benefit, and they insist that he should in this suit make good to them the loss they have thereby sustained. But if their claim is well founded, it is more a matter of injunction damages than for relief otherwise in this proceeding.

An account has been taken that may be sufficient for the purpose of a final decree ; but if not, such further accounting should be had as may be found necessary. The assets not realized upon should be converted into money as far as possible and the firm debts paid, after which the orator and the defendant Thompson will be equally entitled to be reimbursed their advances, and any residue remaining will be equally distributed between them. Whether the Tuttle note

is to stand on the footing of a firm debt or not, or whether the money obtained thereon is to be regarded as an advance by Thompson, or how otherwise the matter should be treated, is not decided, as the question, if any there is, was not raised in argument, and we are disinclined to consider it when the parties have not been heard upon it and when it can be raised, if it becomes important, at a later stage of the case.

*Reversed and remanded.*

Taft and Munson, JJ., being engaged in County Court, did not sit.