JOHN F. BRANDT v. TERRY O. EDWARDS.[1]

February 19, 1904.

Nos. 13,722 (189)⌄

**Dissolution of Partnership.**

Agreement for the dissolution of a partnership considered, and *held*, that an excess of firm capital contributed by one of the partners provided for therein created, first, a liability for the payment of the firm's debts, second, a debt due to the partner for the excess, after which the remaining capital, with profits and subject to losses, must be equally apportioned in accordance with the usual doctrine of equity.

[1] Reported in 98 N. W. 647.

**Compensation of Partner.**

> Where, under the articles of copartnership, one partner was to devote his whole time to the business of the firm and receive a stipulated compensation therefor, upon his neglect to comply with his duties in this respect such agreed compensation is to be treated as the standard by which remuneration for his neglect is to be estimated.

Appeal by defendant from an order of the district court for Polk county, Watts, J., denying a motion for a new trial, after a trial and verdict in favor of plaintiff for $500.   Affirmed.

*Halvor Steenerson* and *Charles Loring,* for appellant.

*F. C. Massee* and *G. A. E. Finlayson,* for respondent.

LOVELY, J.

The hardware firm of Brandt & Edwards, of East Grand Forks, was dissolved by agreement, under the terms of which the retiring partner was, upon the ascertainment of the assets and liabilities, to pay the remaining partner the balance found to be due. There was an attempted adjustment and disagreement as to the amount of such liabilities, an action was brought therefor by plaintiff, the remaining partner, who recovered a verdict. There was a motion for a new trial, which was denied. This appeal is from that order.

Under the articles of copartnership the firm was to continue in business for five years, but either party might terminate the relationship by giving thirty days' notice of his intention to do so. The amount of capital invested was $7,500, of which plaintiff, Brandt, paid $2,500, and defendant, Edwards, $5,000. Brandt was to have charge of the business; Edwards was to give no attention thereto. The profits and losses were to be shared equally, but Edwards was to receive eight per cent. per annum therefrom on the $2,500 which he had paid in excess of the amount contributed by Brandt. It was further provided that, if the contract should be terminated, Brandt should be entitled to one-half the assets belonging to the copartnership after all the debts had been paid, together with the $2,500 to Edwards, with interest at the rate of eight per cent. per annum. Brandt for his personal attention to the management of the business was to receive as stipulated compensation $75 per month. Other provisions in the contract not material here relate to the right of the partners to withdraw funds

from the firm, and to sign notes and accommodation paper for third parties.

The business of the firm continued under this arrangement for about three years, when Edwards gave notice of his intention to terminate the same on the expiration of thirty days thereafter, and shortly afterwards made a written offer to Brandt, proposing to take the stock of hardware owned by the firm at market prices, to accept the book accounts for the stipulated sum of $6,000, and in express terms proposed, within thirty days from the date of settlement, that any sums overdrawn by either of the parties should be paid in cash within fifteen days from the date of said settlement. Edwards further proposed therein that the sum of $20,672.76 was to be estimated as due the creditors of the firm, for which releases were to be obtained; also that the assets of such firm exceeded the liabilities, and, upon receiving the footings of the inventory (of assets), if it should be found they did not, then that Brandt should pay in cash his share of the losses and all overdrafts; and, in case that Brandt desired to purchase the interest of Edwards, the latter offered to sell to the former on the same terms.

The proposal to sell was duly considered by Brandt, who agreed to accept the terms and to purchase Edwards' interest. Under the supposition that the liabilities were less than the assets, and that Edwards would be entitled to a return of the $2,500 excess capital which he had contributed to the business, Brandt immediately paid the defendant that sum, but when the inventories of the hardware stock were received it transpired that they were to a material extent less than their estimated value, and the plaintiff claimed that he had by reason thereof overpaid the defendant, and sought in this action to recover one-half of the amount of such overpayment.

Testimony was received at the trial to show the value of the goods in stock, which was submitted to the jury by the trial court, and upon the evidence the verdict must be regarded as conclusive on that issue.

The most important question, however, arises upon the summarized statement, made above, of the copartnership articles and the proposition for dissolution. Plaintiff having paid $2,500, it is his claim that the same must be regarded as a firm liability, practically of the same nature as if held by a third party against the partnership, and that for this advance he was entitled to the return of one-half of his overpayment;

while it is claimed by defendant that the $2,500 excess capital could not be treated as a firm liability in the adjustment of the affairs between the parties, under the settlement of firm debts on dissolution. The learned trial court adopted the view that the $2,500 in the settlement of the firm's obligations, paid to defendant, should be treated as a liability in his favor, and so instructed the jury. We are clearly of the opinion that this was correct.

The amount of this excess of capital for which defendant was to have annual interest was known and ascertained, and while, between the partnership and outside creditors holding claims against the firm, the whole capital would have to be treated as a primary fund if necessary to satisfy the debts, yet, subject to this obligation, the retiring partner had a right to then have the excess of capital returned to him, with the interest agreed upon, from the capital, and after that the remainder should, upon well-settled equitable principles, be divided between them. This rule applies in the winding up of partnership affairs, in the absence of any agreement to effect that purpose. Bates, Partn. § 786; Uhler v. Semple, 20 N. J. Eq. 288; Matthews v. Adams, 84 Md. 143, 35 Atl. 60; Nims v. Nims, 23 Fla. 69, 1 South. 527; Fish v. Thompson, 68 Vt. 273, 35 Atl. 174. And we think this was the rule attempted to be incorporated into the "give or take" proposition made by Edwards and accepted by plaintiff. While it is possible, by a technical, enforced construction, to treat it differently, yet its reasonable interpretation will not permit a different view from that adopted by the trial court, The liability of the firm's creditors is formally different in some respects from that of the liability of the firm to the partner who contributed the excess of capital, yet after the firm's debts had been paid the relationship of the partners equitably entitled the one contributing such excess to have the same treated as a liability, whether it be designated by that term or not, and we must so regard it in disposing of this case.

There was testimony at the trial tending to show that the plaintiff did not attend to the business of the firm as faithfully and continuously as he was required to do under the partnership articles, and it is very seriously urged by defendant that it was the duty of the court to submit to the jury the question whether defendant would not be entitled to all general losses occasioned to the business through such neglect; but by the terms of the partnership articles the compensation of the plaintiff

for his services was fixed at a stipulated amount, and it seems very clear to us that this should be the standard by which he could recoup or counterclaim therefor.  Neither under the testimony nor upon any decision to which we have been referred could a jury determine what the particular losses to the business would be by reason of the personal nonattention of the partner who was to conduct the business, and an attempt to adjust the damages generally upon the theory that he must respond for business losses would be so remote and incapable of ascertainment as to be merely conjectural.  By the convention of the parties in this respect the value of plaintiff's services had been agreed upon, and the court was correct in holding that the amount, when ascertained, was to be controlled by this obvious test.

We do not think there was error in the orders of the trial court in refusing to rule upon the evidence relative to the amount of liabilities or assets.  The terms of the partnership agreement and for dissolution were clear, and their effect not open to doubt, except in regard to certain matters referred to therein, which required necessary explanation, and might be properly given without changing the effect of the agreement by parol.  Reeves v. Cress, 80 Minn. 466, 83 N. W. 443; J. G. Shaw Blank Book Co. v. Maybell, 86 Minn. 241, 90 N. W. 392.

Other assignments have been considered, but are not regarded as material or requiring specific reference.

Order affirmed.